**UNITED STATES of America**

v.

**Milton L. SMITH, Appellant.**

**No. 88–3159.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 18, 1990.

Decided April 17, 1990.

Paul J. Riley, appointed by this Court, for appellant.

Anthony P. Farley, Asst. U.S. Atty., of the bar of the District of Columbia, pro hac vice, by special leave of Court, with whom Jay B. Stephens, U.S. Atty., and John R.

§ 292(a).

Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before SILBERMAN, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In this appeal from his conviction under a one-count indictment charging unlawful possession with intent to distribute cocaine, Milton L. Smith ("Smith" or "appellant") challenges the District Court's denial of his Motion to Suppress Evidence. Appellant contends that the cocaine which was the subject of the motion was taken from him in violation of his Fourth Amendment rights. We conclude that the District Court did not err in its decision that appellant's rights were not violated, and affirm that Court's decision, for the reasons set out more fully below.

## I. BACKGROUND

According to the evidence received and credited by the District Court at the suppression hearing, Smith arrived at Amtrak Union Station in Washington, D.C., on May 13, 1988, between 8:00 and 8:30 p.m. Two Metropolitan Police Department officers assigned to the Narcotics Branch Interdiction Unit, Sergeant John Brennan and Detective Barbara Lyles, noticed Smith when he was engaged in a loud telephone conversation at a pay station near the information booth of the Amtrak terminal. After Brennan overheard Smith say, "They will never find me down here, they don't know where I am staying" or words to that effect, they began to pay attention to him. They noticed that he was carrying two pieces of luggage. Shortly after the conversation, Brennan approached Smith and engaged him in a conversation wherein Smith stated that he was waiting for a train to Fayetteville, North Carolina, and had just arrived on a plane from New Jersey. Brennan then identified himself as a member of the Narcotics Branch and asked twice if he could search Smith's luggage. Each time, Smith gave a "positive response." Bren-

nan testified at trial that it was his policy to ask twice for consent to search a bag, even when the first response was positive, in order that he could be certain of the response.

Inside a leather tote bag, Brennan found a closed brown paper bag. He opened the brown paper bag which, in turn, contained a large plastic bag filled with a white powder, later found to be cocaine. On these facts, the District Court concluded that no unlawful search or seizure had occurred, that none of appellant's rights had been violated, and that the Motion to Suppress must be denied.

## II. ANALYSIS

Appellant's attack on the District Court's denial of his Suppression Motion is threefold. First, he contends that the officers, by confronting him without probable cause, conducted an illegal seizure of his person. Second, he contends that the search of his luggage was not based on voluntary consent, because the officers had not acted on a suggestion of a district judge in a prior case that they should expressly warn persons approached in the interdiction program of their right to freely walk away, and because, in appellant's view, it is not logical to conclude that a person who knew his luggage to contain contraband would consent to such a search. Third, Smith argues that even if he had given consent to search the tote bag, that consent did not extend to the officers' examination of the contents of a paper bag contained within the tote bag. None of these three arguments exposes any error on the part of the District Judge.

As to the first two of appellant's contentions, we need say but little. We have considered the same constitutional arguments on numerous recent occasions in cases presenting directly parallel facts at the same Amtrak terminal and other public transportation facilities. See, e.g., United States v. Maragh, 894 F.2d 415 (D.C.Cir. 1990); United States v. Winston, 892 F.2d 112 (D.C.Cir.1989); United States v. Joseph, 892 F.2d 118 (D.C.Cir.1989); and United States v. Lloyd, 868 F.2d 447 (D.C.

Cir.1989). To engage in any extended discussion of these arguments would be not only replowing the same ground previously turned in the cited cases and others referenced within them, it would be to plow once more in ground that has been turned, harrowed, furrowed, seeded, and is now producing a luxuriant crop. Therefore, we commend to the interested reader the prior decisions and simply observe once more that an encounter between a police officer and a citizen, involving no more than approach, questioning, and official identification, does not constitute a seizure and does not require probable cause, articulable suspicion, or any other " 'kind of objective justification.' " *Maragh*, 894 F.2d at 418 (quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)). As to the consent question, we again observe that the teaching of *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), establishing that voluntariness is not dependent upon the giving of a *Miranda* -type warning of Fourth Amendment rights, is as applicable at a train terminal as anywhere else in the country. *See, e.g., Joseph*, 892 F.2d at 122. Without further ado, we affirm the District Court on both of these questions.

The search of the brown paper bag within the luggage does present a slight variation from the facts considered in our previous decisions, raising as it does the issue whether consent to search one container extends to searches of opaque sub-containers found therein. However, this variation is one which makes no difference. Our decision in *United States v. Battista*, 876 F.2d 201 (D.C.Cir.1989), appears to be controlling on this point. In that case, an Amtrak passenger had afforded police permission to search his roomette. During the course of that consensual search, the police located a locked suitcase. Battista consented to the search of the suitcase, unlocking it and opening it for the officers. While searching the suitcase, the officers encountered plastic-wrapped packages which they searched without further consent from Battista. In upholding the District Court deci-

sion to deny suppression of cocaine found in those plastic packages, we stated:

> Battista's ... contention regarding the scope of his consent relates to whether [the officer], once inside the suitcase, needed further consent to probe the plastic packages he discovered therein. In effect, Battista would turn the search of this bag into a game of "Mother–may–I," in which [the officer] would have to ask for new permission to remove each article from the suitcase to see what lay underneath. We decline to impose such an unrealistic restriction on an officer's ability to make a search that is reasonably targeted, within the confines of his authority—here, consent to search the suitcase—to uncover the object of the search. Early on in the encounter, Battista was informed that he was suspected of carrying illegal drugs. When he voluntarily opened his suitcase and consented to its search, he did not authorize a search in the abstract. Rather, he authorized a search *for drugs*. [The officer] was therefore justified in probing the *contents of the suitcase, within reasonable limits*, as was necessary to uncover this particular contraband.

876 F.2d at 207–08 (emphasis in original) (citing *United States v. Dyer*, 784 F.2d 812, 816 (7th Cir.1986) ("The consent to search luggage validates the search both of the luggage and of containers within the luggage.")).

■ We also note that certain state court decisions are helpful and persuasive on this point. For example, the Supreme Court of Indiana has held that the consent to search a container "operate[s] as a consent to search items found within the [container] which [are] pertinent to the investigation being conducted." *Heald v. State*, 492 N.E.2d 671, 680 (Ind.1986) (citing *United States v. Torres*, 663 F.2d 1019 (10th Cir.1981)). In *Heald*, police officers had obtained consent to search a suspect's handbag. In the course of the search they extracted a letter from an unsealed envelope found within the bag. Because the letter contained incriminating statements by the defendant, she moved to suppress and contended that her "permission to

search did not extend to the contents of the envelope." *Id.* The Indiana Supreme Court upheld the trial court's rejection of that argument with the above-quoted language. That language seems to us to state the only reasonable view of the law.

■ The Supreme Court of Louisiana reached the same result in *State v. Watson,* 416 So.2d 919 (La.1982). Like Smith in the present case, the suspect in *Watson* had given consent to search her suitcase. When confronted by Narcotics Interdiction investigators at the New Orleans Airport, the searching officers in that case, as in this, found within the luggage a closed paper bag, which they opened and found to contain illegal narcotics. In *Watson,* the suspect had consented to a search for identification, whereas Smith consented to a search overtly directed toward drugs. This obviously makes no difference. The Louisiana Supreme Court observed that "any identification was as likely to be in the paper bag as anywhere else in the suitcase" and that "there was no reason for the police to believe that the consent to search the suitcase did not extend to the paper package inside." *Id.* at 921. In the present case, the narcotics were at least as likely to be in the paper bag as anywhere else in the tote bag and the officers had no reason to believe that the consent to search the tote bag did not also extend to the paper bag inside.

We therefore hold that valid consent, unwithdrawn, to search a container, extends to a search of other containers found therein, at least where the inner container is such that it could contain the object of the search. A paper bag within a suitcase is as likely to contain drugs as the luggage itself. Therefore, we find Smith's contentions to be without merit and affirm the decision of the District Court.