**UNITED STATES of America**

v.

**Melissa SPRINGS, Appellant.**

**No. 90–3208.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 1, 1991.

Decided June 28, 1991.

Rehearing and Rehearing En Banc Denied Aug. 29, 1991.

---

Mary E. Davis (appointed by the Court), Washington, D.C., for appellant.

Bernadette C. Sargeant, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and William M. Blier, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Roy W. McLeese, III, Asst. U.S. Atty., also entered an appearance, Washington, D.C., for appellee.

Before SENTELLE, THOMAS and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In this appeal from her conviction of one count of possession with intent to distribute five grams or more of cocaine base, Melissa Springs ("Springs" or "appellant") raises three challenges to evidentiary rulings of the trial court. She asserts that the court erred (1) in admitting "character" evidence in violation of Federal Rule of Evidence 404; (2) in finding that appellant was not "seized" during a bus station encounter with the police; and (3) in ruling that her consent to a search of her tote bag extended to a search of a closed container found within that bag as well. Only the third of these contentions merits serious consideration, and none merits reversal. We therefore affirm appellant's conviction.

## I. BACKGROUND

On February 1, 1990, Detective William Buss, who was assigned to work with the Metropolitan Police Narcotics Interdiction Unit at the Washington, D.C., bus terminal, observed Springs as she left the bus station through its rear exit. Buss, who was dressed in plain clothes, watched Springs walk past two men, who were being inter-

viewed by two other plain clothes narcotics officers, to a car parked in the driveway in front of the station's "L" Street exit. Buss testified that Springs stopped and stood near the car, "as if waiting for the two males to get finished being interviewed."

Detective Buss then testified that he started walking toward Springs as she was standing by the car, but appellant turned and walked away. Buss increased his pace slightly, approached Springs, showed her his identification, and "asked her if [he] could ask her a few questions." Springs responded to Buss's request in the affirmative.

Springs told Buss that she had just come from New York City and was on her way to "Orlando, Maryland." When asked to verify her travel plans, Springs showed Detective Buss a ticket that reflected travel from New York to Washington. Buss then asked Springs if she had any identification. Springs nodded and opened the purse she was carrying. As Springs was looking through her purse, Buss "explained that [he] was with the narcotics interdiction unit, ... that [there were] big problems with drugs in Washington, and [that his job] was to interview people ... coming from source cities for drugs, [of] which New York City was [one,] ... in an attempt to intercept the drugs before they hit the streets of Washington." Detective Buss then testified that he asked appellant if he could search her purse. She again gave her consent.

After finding appellant's identification in the purse, Buss asked if he could search the remainder of her luggage. In addition to her purse, Springs was carrying a blue tote bag and a brown shopping bag containing a gift-wrapped package. Buss testified that Springs also consented to this request. While searching appellant's blue tote bag, Buss found a baby powder container, marred by what he identified as "pry marks." Buss attempted to open the container, but could not. He then motioned to his partner, Detective Curley, who had been standing some ten to twelve feet away from Buss and the appellant, to examine the container.

Curley took the container and attempted to force it open while Buss continued his search of Springs's bags. Detective Oxendine, another narcotics interdiction officer, assisted Buss in a search of appellant's person, finding a telephone pager. Although Buss found no contraband in any of Springs's other bags, Curley found a plastic bag in the baby powder container containing "a white rock substance," which later field tested to be 34.6 grams of material, 28% of which was pure cocaine base. Springs was then placed under arrest.

Before trial, Springs moved to exclude evidence of the telephone pager found during the search of her person, as well as two airplane tickets showing one-way travel from Washington, D.C., to New York City on January 2 and January 3, 1990, and one round-trip bus ticket from New York City to Richmond, Virginia, on December 13, 1989, recovered from her belongings after her arrest. The District Court denied the motion, however, ruling that the pager was admissible as relevant to the issue of intent to distribute the narcotics. The Court further ruled that the government would be permitted to use the tickets during its cross-examination of Springs if she denied knowledge of or intent to carry the drugs.

## II. ANALYSIS

■ Springs first contends that the telephone pager and airplane tickets were admitted solely to show that appellant was a person likely to be involved in a drug distribution scheme, and that admission of the pager and tickets would therefore run afoul of Federal Rule of Evidence 404, which, in subsection (a), provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," and, in subsection (b), that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." We find, however, that admission of the pager and tickets does not violate the strictures of Rule 404. Even if the items could be considered probative of character, such evi-

dence is nonetheless admissible "so long as the evidence is not offered *solely* to prove character." *United States v. Miller*, 895 F.2d 1431, 1436 (D.C.Cir.) (emphasis in original), *cert. denied,* —— U.S. ——, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). Here, the government proffered the evidence not to demonstrate a defect of character, but to prove that appellant knowingly and intentionally acted as a drug courier. The government offered expert testimony demonstrating that drug couriers often carry pagers. Thus, these exhibits, like scales and plastic bags filled with cocaine or marijuana, are relevant to demonstrate the intent to distribute narcotics. *See, e.g., United States v. Payne,* 805 F.2d 1062, 1065 (D.C.Cir.1986) (finding evidence of "scales and zip-lock bags" relevant to intent to distribute marijuana). This use of the evidence is a proper purpose not forbidden by Rule 404. The pager was logically part of the specific equipment Springs might use in acting as a drug courier, and thus tended to show that Springs actually intended to distribute the narcotics found in her possession. Similarly, the tickets reflecting repeated travel to and from New York City, a recognized source of narcotics, sufficiently linked appellant to the distribution scheme to permit their use during the government's cross-examination of Springs to refute her claim that she did not act knowingly as a drug courier carrying crack cocaine between New York and Washington. Because neither the pager nor the tickets were offered as evidence of Springs's character, Rule 404(a) does not bar their admission. Moreover, because the evidence was offered to prove intent rather than "to prove the character of a person," both the pager and the tickets are admissible under Rule 404(b) even if their possession might be considered evidence of an extrinsic "act." *See United States v. McDowell,* 762 F.2d 1072, 1074–75 (D.C.Cir. 1985). We therefore cannot say that the District Court abused its discretion in deciding to admit the pager and tickets into evidence. *See United States v. Anderson,* 881 F.2d 1128, 1142 (D.C.Cir.1989) (district court's ruling on admissibility of evidence

"will be overturned only for abuse of discretion").

■ Springs's second contention, that she was seized improperly during her pre-arrest conversation with Detective Buss, is also without merit. According to Springs's own testimony, the detective was dressed in plain clothes, never exhibited a weapon, never touched appellant, spoke in a normal, conversational tone of voice throughout their conversation, and politely inquired whether he could ask her a few questions. Appellant's encounter with the detective cannot be deemed a seizure "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [she] was free to leave." *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.)); *accord United States v. Joseph,* 892 F.2d 118, 121 (D.C.Cir.1989); *United States v. Lloyd,* 868 F.2d 447, 450 (D.C.Cir.1989). Importantly, this test is objective, based upon the view of a "reasonable person" who is "innocent of any crime." *United States v. Savage,* 889 F.2d 1113, 1116 (D.C. Cir.1989). *See also Florida v. Bostick,* —— U.S. ——, —— – ——, 111 S.Ct. 2382, 2386 –87, 115 L.Ed.2d 389 (1991); *United States v. Winston,* 892 F.2d 112, 117 (D.C.Cir. 1989) (framing test as whether "a reasonable, law-abiding person ... would not have felt free to walk away"), *cert. denied,* —— U.S. ——, 110 S.Ct. 3277, 111 L.Ed.2d 787 (1990). Faced with a similar factual scenario in *United States v. Smith,* we observed "that an encounter between a police officer and a citizen, involving no more than approach, questioning, and official identification, does not constitute a seizure." *United States v. Smith,* 901 F.2d 1116, 1118 (D.C.Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990). We find nothing to distinguish the circumstances of this case from those of *Smith, Winston,* or a number of other cases arising from drug interdiction interviews in which this Court has found that no seizure had occurred.

■ The present case also parallels *Smith* in regard to the third issue. In *Smith*, as in this case, the police searched a tote bag. In Smith's tote bag they found a brown paper bag, which, like the baby powder container in the present case, contained a large plastic bag filled with cocaine. Here, as there, we will uphold the search. In *Smith*, we noted that our prior opinion in *United States v. Battista*, 876 F.2d 201 (D.C.Cir.1989), "appear[ed] to be controlling on this point." *Smith*, 901 F.2d at 1118. In each of those cases we held that "the consent to search a container operates as a consent to search items found within the container which are pertinent to the investigation being conducted." *Id.* (internal quotations and brackets omitted) (quoting *Heald v. State*, 492 N.E.2d 671, 680 (Ind.1986)). The phrase "pertinent to the investigation being conducted" means that a container found within the luggage that reasonably could be expected to contain the object of the search is presumably within the scope of the consent, unless the consent is withdrawn when that container is reached. We further noted in *Smith* that this position not only represented circuit law, but that other jurisdictions were in accord. *Id.* at 1118–19, citing *Heald, supra; United States v. Torres*, 663 F.2d 1019 (10th Cir.1981); and *State v. Watson*, 416 So.2d 919 (La.1982).

Since the time of *Battista* and its progeny, the United States Supreme Court has spoken definitively on the subject. In *Florida v. Jimeno*, —— U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), the Supreme Court reviewed a case in which a suspect had given officers consent to search an automobile for the presence of cocaine. Within the automobile, the officers found a folded, brown paper bag. Within the paper bag, they found a kilogram of cocaine. The Supreme Court upheld the search of the bag as being within the consent to search the automobile containing it, stating that "[t]he scope of a search is generally defined by its expressed object." *Id.* at ——, 111 S.Ct. at 1804 (citing *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). The Court further noted that Jimeno's permission to search

the automobile did not place any explicit limitation on the scope of the search. The police informed the suspect that the object of the search was narcotics; any reasonable person "may be expected to know that narcotics are carried in some form of container." *Id.* Therefore, it stood to reason that, unless withdrawn, the consent to search the automobile extended to the opaque container found therein.

The same reasoning applies to the case before us. Buss explicitly advised Springs that he was looking for narcotics. Springs, in turn, did not limit her consent to search the luggage. "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at ——, 111 S.Ct. at 1804. Here, the baby powder container was not an unlikely repository of narcotics. No reasonable person would expect the narcotics to be scattered loosely throughout the tote bag. Thus, the police had reason to believe that the scope of appellant's consent extended to a search of the baby powder container. Because Springs placed no limitations on the scope of the search and was apprised fully that the detectives would be looking for narcotics in the bag, appellant's consent to search extended beyond her tote bag to objects within the bag capable of containing drugs. Accordingly, we find that *Florida v. Jimeno* compels affirmance in this case.

We do note, however, that the Supreme Court expressly distinguished the circumstances of *Jimeno* from the case in which the subcontainer is locked and cannot be searched without being broken open. The *Jimeno* Court determined that "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk." *Id.* at —— – ——, 111 S.Ct. at 1804. We appreciate the distinction, but note that in the present case the evidence supports a view that the opening of the baby powder container did

not depend upon possession of a key, knowledge of a combination, or anything other than merely removing its lid. Neither did the fact of its opening render it useless, anymore than the opening of the folds destroyed the usefulness of the paper bag in *Jimeno*. Therefore, we await with the Supreme Court the day when the locked briefcase comes before us. On the present facts, however, we find ourselves compelled by the law of this Circuit and the Supreme Court to affirm the decision of the District Court.

### III. CONCLUSION

For the reasons set forth above, we affirm the decision of the District Court.