22 F.3d 1185
 306 U.S.App.D.C. 103
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Donald NICHOLS, Appellant.
 No. 93-3047.
 United States Court of Appeals, District of Columbia Circuit.
 March 28, 1994.
Rehearing Denied June 1, 1994.*
 
 Before: WALD, HENDERSON and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on the record from the United States District Court for the District of Columbia and on the briefs and arguments by counsel. The court has accorded the arguments full consideration and determined the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(1).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Appellant Donald Nichols seeks reversal of his convictions of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. Sec. 922(g)(1), and unlawful possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. Sec. 922(k). For the reasons set forth below, we affirm.
 
 I.
 
 5
 Viewing the facts in the light most favorable to the government, see United States v. Monroe, 990 F.2d 1370, 1373 (D.C.Cir.1993), the evidence at trial established the following facts. At 8:45 P.M. on July 16, 1992, Officer John W. Croson and Officer Mark J. Nassar of the D.C. Metropolitan Police Department observed Nichols and a passenger drive past them in a Datsun with no front license plate and a missing taillight. Nichols sped up slightly and turned into an alley at the rear of 203 M Street as the police followed him. Nichols and his passenger exited the car, leaving the keys in the ignition, and began to walk away from the officers but the officers called them back. Officer Nassar asked Nichols for his license and registration but Nichols claimed to have neither because he had just returned from playing basketball. When Officer Nassar asked whose car the Datsun was, Nichols stated "It's mine." Meanwhile, Officer Croson frisked Nichols's passenger, Kevin Patterson, approached the passenger side of the car and observed a pistol in plain view on the driver's side floor of the car, near the gas pedal. The officers then arrested Nichols and Patterson.
 
 
 6
 During a search of the car, the police found four ziplock bags of crack cocaine in the hatchback area. They also found a receipt for a typewriter in Nichols's name. Finally, a pager was recovered, although there is conflicting evidence about whether the pager was found in the car or on Nichols himself. Nichols was charged with possession of a firearm by a convicted felon (count one), possession of a firearm with an obliterated serial number (count two) and possession of a controlled substance (count three).[1]
 
 
 7
 Before trial, Nichols moved to suppress any evidence regarding the pager. The trial court denied his request, finding the pager admissible as evidence of the circumstances surrounding the arrest but prohibiting the government from arguing any connection among pagers, drugs and guns. The pager was introduced into evidence at the trial. During closing arguments the prosecutor implied that the presence of the pager established a link between Nichols and the contraband found in the car.
 
 
 8
 Also at trial, on redirect examination during the government's case-in-chief, and again during reply, the government put on evidence that the license plate on the Datsun was registered to "Melvin Nichols."[2] No testimony was elicited connecting "Melvin Nichols" to the appellant. In its closing argument, the government inaccurately stated both that the license plate was registered to Nichols himself and that it was registered to a family member. The court sustained objections to each of the assertions and gave a curative instruction.
 
 
 9
 After instructing the jury but before its deliberations began, the judge asked the twelve jurors and two alternates if anyone would be unable to proceed for any reason. Receiving a negative response to her question, the judge dismissed the two alternates. Jury deliberations began on Friday afternoon and then broke for the weekend. When the jury reconvened on Monday, Juror No. 1 stated that she was ill. Although she briefly joined the jury for deliberations on Monday, she again became ill and the courthouse nurse told the judge that Juror No. 1 would be unable to continue that day. After conferring with both parties, the judge excused the jury until Tuesday in the hope that she could return.
 
 
 10
 On Tuesday morning the judge learned that Juror No. 1 was hospitalized. The judge told the parties that she thought the jury should proceed with eleven members but Nichols objected. Because of his objection, the judge decided to contact Juror No. 1 to find out how long she would be incapacitated. After speaking with Juror No. 1's physician, the judge concluded that she would not be back for at least one week. The prosecution asked to proceed with eleven jurors and the defense again objected. Defense counsel asked that jury deliberations be held in abeyance for at least one week to give Juror No. 1 time to recover. Nichols's lawyer expressly stated that "we are not asking for a mistrial." Indeed, he emphasized that "[w]hat we wanted to do was to continue with a full complement of 12 jurors." Appendix at 181. The trial court then excused Juror No. 1 for just cause because of the length of time--at least one week--before deliberations could continue and the uncertainty of continuing even at that time.
 
 
 11
 The eleven-member jury convicted Nichols on the firearm count but acquitted him on the drug possession count. The judge then conducted a bench trial on the other firearm count (count 1) and found the appellant guilty. Nichols raises three issues on appeal. First, he argues that the trial court erred in excusing a juror after deliberations began and allowing the jury to proceed with only eleven members. Second, he claims that certain evidence was improperly admitted and that its admission, along with the prosecutor's alleged misuse of it, deprived him of a fair trial. Third, he contends that the evidence was insufficient to support his conviction.
 
 II.
 
 12
 Federal Rule of Criminal Procedure 23(b) allows a jury with fewer than twelve members to render a verdict. Nichols argues, however, that the trial court's decision to allow his jury to proceed with eleven members constituted an abuse of discretion and that the court should have instead declared a mistrial. We disagree.
 
 
 13
 Rule 23(b) provides that absent stipulation by the parties, "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." Fed.R.Crim.P. 23(b). The rule thus establishes a two-step inquiry. First, the court determines whether there is just cause to excuse a juror. Second, if just cause to excuse the juror exists, the court must exercise its discretion to determine whether the remaining eleven-member jury should proceed. If the court decides that the jury should not proceed, it then declares a mistrial.
 
 
 14
 It is clear that while Nichols objected to the court's decision to excuse Juror No. 1, he did not request, and in fact explicitly denied the option of, a mistrial. Having failed to challenge the district court's discretionary decision to proceed once Juror No. 1 was excused, Nichols cannot now challenge that decision. The only question we must address, then, is whether just cause existed to excuse the juror.
 
 
 15
 The trial court made every effort to determine when Juror No. 1 would be able to return, including speaking with the juror and with the juror's physician. The judge's efforts led her to the reasonable determination that the full twelve-member jury would be unable to deliberate for at least one week. It was doubtful whether Juror No. 1 would be able to return even then. The four-day trial ended on December 18 and, in light of the intervening holidays, the earliest the jury could reconvene was December 28. A break in deliberations of this length "would have risked dulling the jurors' recollections of the evidence and summations and heightened the danger that the jurors would discuss the case with outside persons." United States v. Stratton, 779 F.2d 820, 832 (2d Cir.1985), cert. denied, 476 U.S. 1162 (1986). Therefore the trial judge did not abuse her discretion in excusing Juror No. 1. Cf. United States v. Tabacca, 924 F.2d 906, 915 (9th Cir.1991) (juror's absence for only one day not just cause); United States v. Armijo, 834 F.2d 132, 1334-35 (8th Cir.1987) (juror's certain absence until following week just cause), cert. denied, 485 U.S. 990 (1988).
 
 
 16
 Nichols next argues that evidence regarding the pager as well as the person in whose name the license plate was registered was improperly admitted and that the prosecutor misused the evidence in closing argument. According to Nichols, the pager could be introduced "to demonstrate the intent to distribute narcotics," United States v. Springs, 936 F.2d 1330, 1333 (D.C.Cir.1991), but because he was not charged with distribution, evidence regarding the pager was irrelevant. He further maintains that evidence of the pager was unfairly prejudicial because it caused the jury to speculate that he might be involved in the drug trade and therefore carried firearms. See Fed.R.Evid. 403. Finally, Nichols claims that the prosecutor improperly insinuated this connection during closing argument.
 
 
 17
 We find Nichols's arguments unpersuasive. We have previously noted that, at least in the context of a charge of possession with intent to distribute, a pager can constitute relevant evidence. United States v. Washington, 12 F.3d 1128, 1136 (D.C.Cir.1994). The fact that evidence is particularly relevant to a charge involving drug distribution, however, does not mean that it is without relevance to a charge of drug possession only. Nevertheless, the prosecutor's suggestion that the pager connected Nichols with the drugs and the gun found in the car was probably improper given the limited purpose for which the court admitted the evidence. If the suggestion was improper, however, it amounted to harmless error. It is highly unlikely that, because of the pager, the jury believed that Nichols was a drug dealer and therefore carried a gun but, at the same time, did not believe the drugs in the car belonged to him. We are "able to declare a belief that [the error] was harmless beyond a reasonable doubt," Chapman v. California, 386 U.S. 18, 24 (1967), because we conclude that the jury did not convict Nichols based on the inference the prosecutor asked it to draw regarding the pager.
 
 
 18
 We also reject Nichols's arguments regarding the evidence of the license plate registration, that is, that the evidence was erroneously admitted and that the prosecutor drew improper inferences from it. During his defense, Nichols put on evidence that the Datsun belonged to Rodney Horns and that Horns loaned the car to Kevin Patterson, Nichols's passenger. The individual in whose name the license plate was registered was therefore relevant to rebut this evidence. While it is true that Melvin Nichols's name was first revealed during the prosecution's case, the judge cut short any development of that line of inquiry by sustaining Nichols's objection.[3] In any event, inasmuch as it was properly admitted in reply, any error in allowing the testimony given during the prosecution's case to stand was effectively removed. The prosecutor could then properly refer to Melvin Nichols as the registrant of the license plate in closing argument.
 
 
 19
 The prosecution's claim that the Datsun's license plate was registered to Nichols or to one of his family members, however, was clearly improper. No evidence linked Nichols to "Melvin Nichols." Nevertheless, the prosecution's misstatements again amounted only to harmless error. First, Nichols admitted to the police that the car was his. Moreover, ownership of the car appears to have been of limited significance to the jury. The jury acquitted Nichols on the drug possession charge even though four ziplock bags of crack cocaine were found in the car. The jury convicted Nichols of possessing the firearm, on the other hand, most probably because of his proximity to it--it was on the driver's side floorboard of the car Nichols was driving--and because Patterson denied owning it or placing it on the floor of the car.
 
 
 20
 Generally, we are hesitant to reverse a conviction because of a prosecutor's improper references in closing argument. See United States v. Edelin, 996 F.2d 1238, 1243 (D.C.Cir.1993), cert. denied, 114 S.Ct. 895 (1994); United States v. North, 910 F.2d 843, 897, amended in part on other grounds, 920 F.2d 940 (D.C.Cir.1990), cert. denied, 111 S.Ct. 2235 (1991). Here, the limited significance of the ownership issue, the curative effect of the judge's limiting instruction, see United States v. Monaghan, 741 F.2d 1434, 1443 (D.C.Cir.1984), and the existence of ample other evidence to convict Nichols, cf. United States v. Teffera, 985 F.2d 1082, 1089 n. 6 (D.C.Cir.1993), all lead us to find the prosecutor's misstatements harmless beyond a reasonable doubt.
 
 
 21
 Finally, Nichols argues that the evidence was insufficient to sustain his firearms convictions. We will affirm the convictions if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Monroe, 990 F.2d 1370, 1373 (D.C.Cir.1993). Viewed in this light, the evidence establishes that Nichols was driving the car, the gun was lying, visible, on the driver's side floorboard of the car, Patterson denied placing the gun there and no saw him place the gun there. The evidence also shows that after passing the police, Nichols sped up and then, alighting from the car, attempted to flee, leaving the car keys in the ignition.
 
 
 22
 This evidence is sufficient to establish Nichols's constructive possession of the firearm: he was knowingly in a position to exercise dominion or control over it. See United States v. Jenkins, 981 F.2d 1281, 1283 (D.C.Cir.1992). A gun lying on the floorboard at the feet of the driver, in plain view, does more than "suggest the likelihood that in some discernible fashion the [driver] had a substantial voice vis-a-vis the [contraband]." Id. (quoting United States v. Foster, 783 F.2d 1087, 1089 (D.C.Cir.1986) (emphasis in original)). It suggests that the driver must have known the gun was there and that he could easily have reached for and used it. "[D]uring the period in which the police observed the car, none of its other occupants engaged in any action indicating that one of them might have placed the gun[ ] under the seat," United States v. Whitfield, 629 F.2d 136, 143 (D.C.Cir.1980), a fact we have previously found relevant in establishing constructive possession. See id. In addition, Nichols had possessed the car for a week before his arrest and a day-old receipt bearing his name was found in the car; a reasonable juror could have therefore concluded beyond a reasonable doubt that Nichols constructively possessed the gun. See id. As it is sufficient to support Nichols's conviction of unlawful possession of a firearm with an obliterated serial number, the evidence also supports his conviction of unlawful possession of a firearm by a felon.
 
 
 
 *
 Wald, Circuit Judge would grant the petition for rehearing
 
 
 [1]
 By stipulation the parties agreed that only counts two and three would be tried to a jury and, in the event of a conviction on count two, Nichols would receive a bench trial on count one. At that point the jury's finding of unlawful possession of a firearm would be treated as dispositive on possession and Nichols would stipulate to his prior felony conviction
 
 
 [2]
 The evidence established only that the license plate, not the vehicle itself, was registered to "Melvin Nichols."
 
 
 [3]
 The following colloquy took place:
 Prosecutor: ... did you find out who the tag was registered to on the back of that automobile?
 Officer Nassar: Melvin Nichols.
 Defense Counsel: Objection, your honor. Beyond the scope.
 Court: Technically it is.
 Prosecutor: Your honor, if we may approach on that.
 Court: I don't think you have to approach on that. I really think it's beyond the scope of what she asked.
 Prosecutor: Your honor, she has opened the doors to other documents that--
 Court: I think I have ruled.
 Appendix at 84.