

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-2005

# USA v. Birt

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1562

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Birt" (2005). *2005 Decisions.* Paper 1559.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1559

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1562

———————

UNITED STATES OF AMERICA

v.

JAMELL BIRT,

Appellant

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 02-cr-00286)
District Judge: Honorable Yvette Kane

———————

Argued December 29, 2004

Before: AMBRO, VAN ANTWERPEN and STAPLETON, <u>Circuit Judges</u>

(Opinion filed:  January 19, 2005)

William C. Costopoulos, Esquire
George H. Matangos, Esquire (Argued)
Costopoulos, Foster & Fields
831 Market Street
P.O. Box 222
Lemoyne, PA 17043

        Attorneys for Appellant

Thomas A. Marino
   United States Attorney
William A. Behe (Argued)
   Assistant U.S. Attorney

Theodore B. Smith, III, Esquire
Office of the United States Attorney
Federal Building, Suite 220
228 Walnut Street
P.O. Box 11754
Harrisburg, PA   17108

      Attorneys for Appellee

---

OPINION

---

AMBRO, Circuit Judge

Jamell Birt appeals the District Court's denial of his motion to suppress evidence taken from a bag in the trunk of his car.  We affirm.

## I. Factual Background and Procedural History

In October 29, 2001, Trooper Gregory Miller of the Pennsylvania State Police stopped Birt for a traffic violation by pulling up behind him in his patrol car with his emergency lights flashing.  Birt concedes that the initial traffic stop was valid.

Birt showed Trooper Miller a valid North Carolina driver's license and a valid Maryland car registration.  This raised some suspicion for Trooper Miller, as he testified that in his experience persons who are illegally transporting guns or drugs often have documents from different states.  Trooper Miller observed that Birt appeared "overly nervous for a regular traffic stop," and he thus ran a criminal history check on Birt that revealed an extensive record of drug charges.

2

Trooper Miller called for backup, and a second officer arrived with his patrol car's emergency lights flashing. Trooper Miller proceeded to issue Birt a traffic warning. After telling Birt that he was free to go, Trooper Miller inquired whether he could ask Birt more questions. Birt gave no oral response but extended his hands palms up at chest height. Trooper Miller then asked Birt a series of questions about his journey and whether Birt had anything illegal in the car such as guns or drugs. Birt responded that he had nothing to hide.

At this point, Trooper Miller asked Birt for permission to search his vehicle. Trooper Miller, in testimony credited by the District Court, said that Birt told him it would be "okay" for him to search the car. Birt, however, testified that he did not consent to a search. Trooper Miller also informed Birt that he was going to have Hammer, his drug dog who had been present in Trooper Miller's patrol car throughout the encounter, "run on the car." Birt did not respond. The District Court also credited Trooper Miller's testimony that Birt told him he could use the car's interior trunk release mechanism to access the trunk.

Trooper Miller removed an overnight bag from Birt's trunk, and Hammer twice alerted to the bag. When Trooper Miller opened the bag, he found crack cocaine inside. He then arrested Birt.

In March 2003, the District Court denied Birt's motion to suppress the crack cocaine found in the overnight bag, determining that Birt's encounter with Trooper Miller

3

after the issuance of the traffic warning was consensual and that the search of the overnight bag did not exceed the scope of Birt's consent to the search of his car. Birt subsequently entered a conditional guilty plea to charges of possession with intent to distribute an unspecified quantity of crack cocaine. The sole issue on which he reserved his right to appeal was the denial of his suppression motion, and that issue is now before us.[1]

## II. Discussion

We review the District Court's "denial of the motion to suppress for clear error as to the underlying facts, but exercise[] plenary review as to its legality in light of the [C]ourt's properly found facts." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003). Birt advances two arguments in favor of reversal: (1) the District Court erred in finding that his continued encounter with Trooper Miller was consensual; and (2) even if Birt did give a valid consent to the search of his car, the search of the closed overnight bag in the trunk exceeded the scope of that consent. We address each argument in turn.

A. **The District Court's Determination that Trooper Miller's Further Questioning of Birt was Consensual**

The voluntariness of an individual's consent is a question of fact to be determined from the totality of the circumstances. Id. at 459. "[T]he critical factors comprising a totality of the circumstances inquiry [are] the setting in which the consent was obtained,

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting party." Id.; see also United States v. Kim, 27 F.3d 947, 951 (3d Cir. 1994) (in determining whether an encounter is consensual, rather than a seizure, "the test is whether a reasonable person would feel free to disregard the police and go about his business or whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter, taking into account all of the circumstances surrounding the encounter." (internal quotation and citation omitted)).

The District Court's finding that Trooper Miller's extension of the traffic stop and further questioning of Birt was consensual is amply supported by the record. The concededly valid traffic stop took place on a busy highway. Birt himself testified that Trooper Miller told him he was free to leave after the traffic warning was issued. Birt also opened his arms in a "gesture of invitation" after Trooper Miller requested further questioning and proceeded to respond to all questions asked. Birt is an adult, and, as the District Court found, there is no indication that he is particularly vulnerable to coercion. Although another officer and a drug dog were present and the lights of both patrol cars were flashing during the encounter, a reasonable person would not have been so intimidated by these circumstances that he would not have felt free to leave or otherwise terminate the encounter.[2] The second officer did not interact with Birt at all, and the drug

---

[2]Birt testified that he felt compelled to answer Trooper Miller's questions because, about two months prior to the stop at issue here, he was a passenger in a car stopped by Trooper Miller. According to Birt, Trooper Miller threatened that he would have that car

dog remained in Trooper Miller's car until after Birt consented to the search of his car.

Having reviewed all the testimony from the suppression hearing, we do not believe that the District Court's finding that the continued encounter between Trooper Miller and Birt was consensual is clearly erroneous.[3] It follows that Birt's consent to the search,

_____

towed if the driver did not consent to a search of the vehicle. Trooper Miller testified that he did not remember that stop. The District Judge concluded that she was "not convinced" that Trooper Miller was the officer involved in the prior incident. While typically a specific recitation of facts trumps non-recollection, in the context of the facts here we do not conclude the District Court clearly erred. See Newark Branch, NAACP v. City of Bayonne, 134 F.3d 113, 120 (3d Cir. 1998) ("[Clearly erroneous] review is more deferential with respect to determinations about the credibility of witnesses."). Moreover, there is no evidence that Trooper Miller made any threats during the incident in this case to coerce Birt's cooperation.

[3]At first blush, Birt's reliance on Padilla v. Miller, 143 F. Supp. 2d 453 (M.D. Pa. 1999), appears to provide fertile ground for a possible reversal of the District Court's finding that Birt's continued encounter with Trooper Miller was consensual. In Padilla, Trooper Miller was found liable under 42 U.S.C. § 1983 for violating Padilla's Fourth Amendment rights by, inter alia, extending the scope of a traffic stop without a reasonable, articulable suspicion of criminal activity. Id. at 469–70 (rejecting Trooper Miller's argument that he converted the extension of the traffic stop into a consensual encounter by telling Padilla that he was free to leave before asking him questions beyond the scope of the initial stop). Upon closer inspection, however, the facts in Padilla were more egregious than those in this case.

The District Court found that the defendant in Padilla would not have felt free to leave or otherwise terminate his encounter with Trooper Miller because, on a cold January day, Trooper Miller: (1) ordered Padilla, who wore only a shirt, to get out of his car at least twice; (2) after issuing a traffic warning, told Padilla "in an authoritative tone of voice" that he wanted to ask more questions; and (3) had two other officers present with him at the scene. Id. at 469. By contrast, Birt's encounter with Trooper Miller was not as extensive as was Padilla's, Trooper Miller did not invade Birt's personal space, and there was no finding that Trooper Miller used an authoritative tone in requesting that Birt answer more questions.

By affirming the District Court in this case, we do not in any way lessen the effect of Padilla or condone a repetition of the unconstitutional conduct present in that case. We merely hold that the District Court did not err in finding that the Fourth Amendment line

which was the product of this questioning, was also valid.[4]  We must now determine whether the search of the overnight bag in Birt's trunk exceeded the scope of that consent.

**B.     The District Court's Determination that the Search of the Overnight Bag did not Exceed the Scope of Birt's Consent to the Search of his Car**

A warrantless search is per se unreasonable under the Fourth Amendment. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  "It is well settled, however, that a search conducted pursuant to consent is one of the specifically established exceptions to the search warrant requirement."  Givan, 320 F.3d at 459.

When a warrantless search is authorized by voluntary consent, the extent of that search is limited to the terms of the consent.  Kim, 27 F.3d at 956.  An objective reasonableness standard is used to measure the scope of a suspect's consent.  Florida v. Jimeno, 500 U.S. 248, 251 (1991).  We must therefore ask: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id.

In Jimeno, the Supreme Court held that, when an officer had told a suspect that he believed the suspect was carrying narcotics, it was reasonable for the officer to understand that searching a folded paper bag found on the floor of the car was within the

was not crossed here.

[4]We need not reach Birt's argument that Trooper Miller did not have a reasonable, articulable suspicion of criminal activity that justified the further questioning because consensual encounters do not implicate the Fourth Amendment.  See Kim, 27 F.3d at 950.

7

scope of the suspect's general consent because "a reasonable person may be expected to know that narcotics are generally carried in some form of a container." Jimeno, 500 U.S. at 251. The Court pointed out, however, that the search of a locked briefcase in a suspect's trunk, even when consent to search the trunk had been given, would likely be unreasonable. Id. at 251–52 (discussing the facts of State v. Wells, 539 So.2d 464 (Fla. 1989), aff'd on other grounds, 495 U.S. 1 (1990)). Birt argues that the search of the closed overnight bag in his trunk is akin to the search of the locked briefcase described as unreasonable in Jimeno.

This argument is unpersuasive in light of our decision in Kim. There we held that it was reasonable for officers to understand that train passengers' general consent to the search of their luggage for narcotics authorized them to open closed cans within that luggage. Kim, 27 F.3d at 956–57. We also stated that the closed cans were dissimilar to the locked briefcase discussed in Jimeno, relying on the D.C. Circuit Court's reasoning in United States v. Springs, 936 F.2d 1330 (1991). Springs upheld the search of a container of baby powder in a woman's tote bag when the woman had consented to the search of her luggage and the officer had told her he was looking for narcotics, distinguishing the closed container from the locked briefcase scenario because "the opening of the baby powder container did not depend upon possession of a key, knowledge of a combination, or anything other than merely removing its lid. Neither did the fact of its opening render it useless." Id. at 1334–35.

Following the reasoning of <u>Kim</u> and <u>Springs</u>, Trooper Miller's search of Birt's overnight bag was reasonable. Birt was asked if he had illegal drugs, and a reasonable person would thus have understood his general consent to the search as authorizing the search of any containers in which narcotics might be found, including the overnight bag. No special knowledge was required to open the overnight bag, and there is no evidence that the opening rendered the bag useless. As Birt did not place any limitations on the scope of his consent, Trooper Miller's search of the overnight bag was therefore within the scope of Birt's consent and did not violate the Fourth Amendment.[5]

### III. Conclusion

We affirm the decision of the District Court.

---

[5]The First Circuit has upheld a similar search, although it did so without distinguishing the locked briefcase scenario set forth in <u>Jimeno</u>. <u>United States v. Zapata</u>, 18 F.3d 971, 977–78 (1st Cir. 1994) ("Because the duffel bags were lying in the trunk, appellant's general consent to a search of the automobile constituted consent to a search of the duffel bags.").