UNITED STATES of America

v.

**William L. BUTLER**

No. 3:98–CR–145.

United States District Court,
E.D. Tennessee,
at Knoxville.

Feb. 8, 1999.

Michael J. Mitchell, U.S. Dept. of Justice, Office of U.S. Atty., Knoxville, TN, for plaintiff.

Kim A. Tollison, Fed. Defender Services of Eastern Tenn., Inc., Knoxville, TN, Mike Whalen, Knoxville, TN, for defendant.

## ORDER

COLLIER, District Judge.

Before the Court is the defendant's motion to suppress (Court File No. 18). The motion was referred to Magistrate Judge Robert P. Murrian for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The magistrate judge recommended the motion be denied (Court File No. 31). The defendant filed objections to the magistrate judge's report and recommendation (Court File No. 41).

After reviewing the record, the defendant's objections, and the applicable law, the Court agrees with the magistrate judge's findings of fact and conclusions of law. Accordingly, it is hereby **ORDERED** that the Court **ACCEPTS** and **ADOPTS** the magistrate judge's report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and the defendant's motion to suppress (Court File No. 18) is **DENIED.**

**SO ORDERED.**

## REPORT AND RECOMMENDATION

MURRIAN, United States Magistrate Judge.

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and the Rules of this Court. The defendant, through counsel, has moved to suppress any and all evidence obtained as a result of a warrantless search of his vehicle on Interstate 75 in Campbell County, Tennessee, on or about October 15, 1998 [Doc. 18]. An evidentiary hearing was conducted in this case on

January 15, 1999, and the transcription thereof has been filed as part of the record [Doc. 24]. The only two witnesses who appeared were the arresting officer, Trooper Gregory T. Roberts of the Tennessee Highway Patrol, and the defendant. The parties requested and were given time to file post-hearing briefs and those briefs have now been filed [Docs. 26, 27].

Trooper Roberts was conducting radar surveillance of the south-bound lanes of I-75 in Campbell County, Tennessee, when he observed the defendant's car, a 1987 Cadillac Coupe deVille, in the left lane following a car at a very close interval—about one car length. Trooper Roberts pursued the defendant's vehicle and stopped him for a violation of T.C.A. § 55-8-124, which prohibits the driver of a motor vehicle from following another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and condition of the highway. Traffic was flowing at about 70 miles per hour and the defendant does not seriously contest the fact that he was, in fact, following too closely at the time the trooper observed him. Officer Roberts testified that the defendant agreed that he had committed the violation. Tr. at 6.[1] Trooper Roberts testified that he was suspicious of the defendant from the outset because the defendant was "overly friendly" and "too nice." Tr. at 6, 7. Trooper Roberts said that this was a sign of nervousness to him. Tr. at 45. After Roberts told the defendant that he was going to cite him for following too closely, he returned to his patrol car and made a records check on the defendant. He discovered that the defendant was driving on a suspended driver's license and had a criminal history of conviction of drug

---

1. References are to the transcript of proceedings before the undersigned on January 15, 1999 [Doc. 24].

trafficking and what appeared to be an arrest for escape. Tr. 15, 47. The defendant was sitting on a guard rail between the two vehicles at the side of the road and Roberts said that the defendant stared at him continuously as he ran the records check. Tr. 16. This also made Roberts suspicious. Roberts said he also became suspicious of the defendant when he was discussing the citations that he was going to issue for driving on a suspended driver's license and for following too closely. He said that as he explained the citations to the defendant he had his ticket book in his hand showing him the court date and other information; that while he was doing that, the defendant moved toward him; that this was in a non-aggressive manner, but that the defendant actually moved around to the officer's left hand side and looked at the citations from that vantage point; that defendant actually came close enough to touch his shoulder. Tr. 18–20. This, according to the officer, put him in fear of his safety. When Officer Roberts finished discussing the information on the citations, he handed them to the defendant and told the defendant that he was free to leave. Tr. 20. The traffic stop was over at this point.

A very important question regarding the legality of the search of the defendant's vehicle revolves around what happened just after Trooper Roberts told the defendant that he was free to leave.

Roberts' version of the facts are as follows:

> As he began to walk away I asked Mr. Butler if he was carrying any illegal weapons, drugs, or narcotics either on his person or in the vehicle. It's the same way I do it every time. I have done it many, many times in the past. Mr. Butler stated no, he was not. I then asked him if he was carrying, if he would allow me to search the vehicle, its containers and contents. Mr. Butler

said in his own words, "you have been nice to me, I am going to be nice to you and let you search."

Tr. 21–22. In his written report, which was made the same day as the arrest, Trooper Roberts stated that with regard to getting the defendant's consent he had asked the defendant if he possessed any illegal contraband such as guns, weapons, or narcotics on his person or inside his vehicle. Tr. 26. He testified that that is what the defendant consented to. *Id.*

On cross-examination, defense counsel asked if it was possible that the defendant understood that when he was released from the traffic stop he might "technically be under arrest?" Tr. 43. Roberts answered as follows:

> No sir. Actually I told him I am not going to arrest you.... Therefore, you are free to leave.... I told him specifically he was not under arrest and would not be arrested for that charge.

*Id.* The defendant's version of what happened does not differ dramatically from that of Trooper Roberts'. The defendant testified that he had cleared up the suspended driver's license violation by going to court and he asked the trooper if he could check to see why the records still showed that his license was suspended. The trooper told him that he could not do that. The defendant then testified that he said "Well, I guess I can go now, so I said thank you and I shook his hand. When I tried to leave, then he wanted to search my car. I never did get a chance to walk away from him, period." Tr. 57. The defendant testified on cross-examination that Trooper Roberts never told him that he was free to go and he never walked away. Tr. 63. He did testify, however, that he felt like he was free to go after the trooper told him he could not check on why his license still showed up as suspended and after he shook the trooper's hand.

Tr. 64. The defendant testified that once the trooper asked him if he could search the car he did not feel that at that point he was free to go. Tr. 68. The question that the trooper asked the defendant, according to the defendant's own testimony, was: "Can I search your car? Do you have a gun?" Tr. 54, 69.

From the testimony, it is clear that the defendant admits that he knew that he was free to go after the trooper told him that he couldn't try and clear up the driver's license question and after the defendant shook the trooper's hand. Tr. 64. The defendant admits that he consented to some type of search of his vehicle. Tr. 66. It is really the scope of the search that is in question here. There is a conflict in the testimony in that the trooper testified that he told the defendant he wanted consent to search the vehicle, its containers and contents. The defendant, on the other hand, testified that he was surprised that the trooper was looking into areas where a gun could not have been found. Nonetheless, the defendant testified that the question put to him by the trooper was: "Can I search your car? Do you have a gun?" Defendant's attorney asked him what he had given consent to search for. The answer was somewhat evasive: He testified as follows: "I thought he was just looking for a weapon." Tr. 54.

■ I will resolve this credibility question in favor of Trooper Roberts. I find his testimony credible that he has been trained to ask permission to search the vehicle, containers and contents therein. I believe that is what he asked the defendant on this occasion and the defendant freely and voluntarily consented to the search. The proof is undisputed that defendant was at all times very friendly and cooperative with the officer. The scope of a search is generally defined by its expressed object. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114

L.Ed.2d 297 (1991). General consent to search permits the opening of closed but unlocked containers found in the place to which consent was given. *See* Wayne R. LaFave, *Search and Seizure* § 8.1(c) (1994).

■ In this case, the defendant admits that he consented to a search for a weapon. Even if I believed the defendant's version of the events, the consent he gave, which was to search for a weapon, was broad enough to cover the officer's search of the laundry basket full of dirty clothes in the trunk where the cocaine was found wrapped up in a sock. Trooper Roberts testified that he opened a pair of socks and inside the pair of socks he found a bag which contained eight separate bags. Seven smaller bags contained what he believed to be crack cocaine and one bag contained a white powdery substance. The pair of socks were rolled tightly and were rigid. Tr. 25. Therefore, even if the scope of the search were limited to a search for weapons, the officer would have been justified in looking inside the pair of socks since they were rigid and could have contained a weapon. In any event, the undersigned finds Trooper Roberts' testimony that he asked for permission to search the entire vehicle, containers in it and their contents, and the defendant freely and voluntarily unhesitatingly gave oral permission for such a search.

■ As indicated above, Trooper Roberts testified that various factors led him to believe that criminal activity was afoot. It is settled law that an officer may made a brief investigatory stop of an individual so long as there is a reasonable basis for doing so. *Terry v. Ohio,* 392 U.S. 1, 22–24, 88 S.Ct. 1868, 1880–82, 20 L.Ed.2d 889 (1968). Specifically, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by artic-

ulable facts that criminal activity 'may be afoot' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

The undersigned finds that it has not been established in this case that there was a reasonable basis for any kind of *Terry* stop. There is very little dispute that the defendant was stopped for a traffic violation and that the stop was lawful. An automobile stop is reasonable where the police have probable cause to believe that a traffic violation has occurred. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993)("[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment."), *cert. denied, sub nom. Ferguson v. United States*, 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994). In this case, Trooper Roberts' stop of the defendant's vehicle was proper because he had probable cause to believe that the defendant had committed the violation of following too closely. Nonetheless, under the facts and circumstances, once the traffic stop was completed, the facts articulated by Trooper Roberts do not amount to a reasonable basis for further detention. The officer's testimony that defendant was "too nice," "overly friendly," stared at the officer, touched his right shoulder to the trooper's left shoulder, and that defendant had a prior drug trafficking conviction undoubtedly raised questions in the trooper's mind, but, under the totality of the circumstances, these facts constitute a gossamer web of suspicion that does not amount to the specific, articulable facts that must support a *Terry* detention. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880. Moreover, no such detention occurred. The defendant was free to go after he shook the officer's hand, and he knew it.

Nonetheless, Officer Roberts was within his rights in asking the defendant for permission to search his vehicle after the traffic stop was completed. The defendant was not detained for any period of time; rather, he was asked immediately if he would consent to a search of the vehicle, its containers and contents.

A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). This includes a request for consent to search the individual's vehicle. *United States v. Dunson*, 940 F.2d 989, 994 (6th Cir.1991). And, this consent is not vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded or does not result in prosecution and the individual is free to go before being asked.

*United States v. Erwin*, 155 F.3d 818, 823 (6th Cir.1998), *cert. denied*, 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999).. If the defendant, upon questioning by the officer, indicates that he wants to leave, valid consent can no longer be obtained. *Id.*

Under the facts and circumstances of this case, the defendant made no indication that he wished to leave. He shook the officer's hand and as he began to walk away the question was put to him regarding the search. Tr. 21. If, at that point, the defendant had given any indication that he would like to leave, valid consent could not have been obtained. 155 F.3d at 823. The officer was within his rights in posing the question even though the defendant was in the process of walking away. The defendant was not being

detained at that time pursuant to the traffic stop or any type of *Terry* stop. The burden was on the government to prove that the defendant voluntarily consented to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973). The government met that burden.

For the reasons indicated, it is **RECOMMENDED** that the defendant's motion to suppress be **DENIED.**[2]

**2.** Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide *de novo* review where objections to this report

and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir.1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir.1987).