**Bernard John MANTZKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00140–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 16, 2002.

Decided Nov. 1, 2002.

---

Clement Dunn, Longview, for appellant.

William M. Jennings, Gregg County District Attorney, Longview, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice GRANT.

Bernard John Mantzke appeals his conviction for possession of methamphetamine in an amount of four grams or more, but less than 200 grams, with intent to deliver. Mantzke filed a Motion to Suppress the methamphetamine, which the trial court overruled after a hearing. He then pleaded guilty before the trial court without a plea bargaining agreement. The punishment range for the offense was enhanced, under the habitual offender statute, by the trial court's finding that Mantzke had two prior felony convictions and that the second conviction was for an offense that occurred after the first conviction became final. *See* TEX. PEN.CODE ANN. § 12.42(d) (Vernon Supp.2002). The trial court sentenced Mantzke to twenty-five years' imprisonment.

On appeal, Mantzke contends the trial court erred in overruling his Motion to Suppress. At the suppression hearing, Officer Chad Walls testified as follows: Around 10:00 a.m., he received information from his dispatcher that the driver of a light blue four-door car with Oklahoma Indian Nation license plates was suspected of driving while intoxicated. The driver was reported to be traveling eastbound on Interstate 20 at the 583 milepost marker.

Walls waited at milepost marker 589, spotted a car conforming to the description the dispatcher provided, and confirmed it had Oklahoma Indian Nation license plates. When he first saw the car, "it was half way on the shoulder and half way on the main traveled roadway." The car remained over the shoulder for "three—four seconds" before returning to the traveled roadway.[1] He followed the car for about five minutes and witnessed it again veer onto the shoulder and back into the roadway.

Walls initiated a traffic stop, approached the car, which Mantzke was driving, and noticed Mantzke was holding "a torch type lighter in his [left] hand." Walls testified these types of lighters are used for heating certain narcotics.

Mantzke was unable to provide a driver's license or proof of insurance and explained that his billfold, his driver's license, and all of his money had been stolen from a convenience store down the road. Mantzke identified himself as Ricky Ray Stamper.

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

1. In its brief and at oral argument, the State characterized Walls as testifying that Mantzke's vehicle almost hit his. That was not the testimony. Walls testified Mantzke's car returned to the roadway "before he got pretty close to me."

Walls asked Mantzke to exit his car, patted him down "for [Walls's] safety," and discovered a large bulge in Mantzke's right pants pocket. He asked Mantzke what he had in his pocket, and Mantzke removed $115 in cash. Walls became suspicious because Mantzke had just told him all his money had been stolen.

Regarding Mantzke's possible intoxication, Walls testified he did not smell any alcohol on Mantzke and did not detect that Mantzke was walking strangely. He also did not ask Mantzke to take a field sobriety test. He further admitted that in the course of the encounter, he did not develop probable cause to arrest Mantzke, but would have written him a citation for failing to have his driver's license. Nevertheless, he had not completely ruled out that Mantze was intoxicated.

Walls testified that Mantzke was very nervous, was shaking, and was "hesitant to tell me anything." He asked Mantzke if he could search his car, and Mantzke at first refused, telling Walls he had his car searched before and "did not want his stuff scattered all over the place." Walls assured Mantzke "that would not happen." Mantzke responded that Walls "could take a glance inside the car" and that Mantzke would open the door for him. Walls also testified Mantzke told him he had been in jail before for narcotics.

Walls testified that based on his conversation with Mantzke, he believed he had Mantzke's consent to search the car. He searched the car "for safety reasons," confining his search to the areas of the inside within the driver's immediate reach. Under the passenger's seat, he discovered "a maroon zipper[ed] bag," which he unzipped and discovered "a content of [a] white powder substance ... [and] a small baggie with [a] hard white substance in it." Based on his training, he concluded the bags contained methamphetamine.

Mantzke testified he never gave Walls permission to search his car. In fact, he testified he told Walls he could glance through the windows of the car, but could not search it. He also denied telling Walls he would open the door for him. He testified Walls called for a drug dog and made him wait twenty minutes for the dog to arrive. Mantzke testified it was only after another officer arrived that Walls searched his car.

██ At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight of their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the evidence in the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). Further, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990).

██ The general rule is that we must afford almost total deference to the trial court's determination of the historical facts the record supports, especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We are also to afford such deference to a trial court's ruling on the application of law to fact questions if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* We may review de novo the application of law to fact questions not turning on credibility and demeanor. *Id.*

██ The parties dispute whether the search of Mantzke's car was based on his

consent. Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is per se unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id.; Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim.App.2000).

■ When a person voluntarily consents to a search, the officer's authority to perform the search is not without limit. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *DuBose v. State*, 915 S.W.2d 493, 496 (Tex. Crim.App.1996). The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801; *DuBose*, 915 S.W.2d at 496. The standard for measuring the scope of consent is that of objective reasonableness, i.e., what a reasonable person would have understood by the exchange between the officer and the individual. *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801; *DuBose*, 915 S.W.2d at 496.

■ Relying on the semantic difference between the terms "glance" and "search," Mantzke contends he did not consent to a search of his car. However, viewing the evidence in the light most favorable to the trial court's ruling, it is clear a reasonable person in Walls's position would have understood Mantzke as consenting to a search limited to a brief look into the interior of his car. Walls and Mantzke both testified Mantzke feared a more intrusive search would disturb his belongings. Walls testified Mantzke offered to open the door for him, suggesting he was not limiting the search to what Walls could observe through the car windows.

■ The need for the protection of police officers should not be taken lightly; the right of the Fourth Amendment protection against unreasonable searches and seizures of all citizens should also not be taken lightly. The officer in the present case testified he was searching for weapons at the time he found the maroon bag containing illegal drugs. Such a search for weapons will be justified only where the officer can point to specific and articulable facts which reasonably led him to conclude the suspect might possess a weapon. *Carmouche*, 10 S.W.3d at 329. It should be further observed that such a search is authorized even where the motorist is outside the vehicle and under an armed guard. Any search, however, must be limited to those areas in which a weapon may be hidden. *Michigan v. Long*, 463 U.S. 1032, 1051–52, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

■ The present case has an accumulation of factors that may have led to the search for a weapon. Mantzke could not produce his driver's license or any form of identification; he had a torch-type lighter, which, according to the officer, was the type of lighter commonly used for heating certain narcotics; and Mantzke was nervous and shaking and hesitant to tell the officer anything. Further, Mantzke had stopped the car on the basis of "erratic driving," and Mantzke had told the police officer he had been in jail before for narcotics.

When the officer patted down Mantzke, he observed a large bulge in his pocket. Mantzke told him the bulge was money, and when Mantzke pulled it out of his pocket at the request of the officer, there was $115. This story was inconsistent with Mantzke's statement to the officer that his billfold, his driver's license, and all of his

money had been stolen at a convenience store down the road.

In *Balentine,* the Texas Court of Criminal Appeals held that the appellant's false and contradictory answers, although not automatically synonymous with dangerousness, may be a reasonable basis for an officer to infer that this might be the type of person who would conceal a weapon. *Balentine v. State,* 71 S.W.3d 763 (Tex. Crim.App.2002).

The officer testified that he searched for a weapon in places that would be within the immediate reach of the driver and that under the passenger's seat, he located a maroon zippered bag. The bag was described as a large bag with a quantity of a white powdered substance, along with a small bag with a harder rock-type substance, a large quantity of money (approximately $2,500 in United States currency), two flashlights, a small vial of blue and white pills, a blue torch-type lighter, and a West Virginia spoon, along with numerous Q-tips.

We have concluded the officer's search did not exceed the scope of that which was necessary to determine whether Mantzke was armed. Therefore, the search was valid, and the trial court properly denied Mantzke's Motion to Suppress the fruits of the search.

The judgment of the trial court is affirmed.