# FLORIDA v. JIMENO ET AL.

No. 90–622.   Argued March 25, 1991—Decided May 23, 1991

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, O'CONNOR, SCALIA, KENNEDY, and SOUTER, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 252.

*Michael J. Neimand,* Assistant Attorney General of Florida, argued the cause for petitioner. With him on the brief was *Robert A. Butterworth,* Attorney General.

*Deputy Solicitor General Roberts* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Sean Connelly.*

*Jeffrey S. Weiner* argued the cause for respondents. With him on the brief was *Dennis G. Kainen.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In this case we decide whether a criminal suspect's Fourth Amendment right to be free from unreasonable searches is violated when, after he gives a police officer permission to search his automobile, the officer opens a closed container found within the car that might reasonably hold the object of the search. We find that it is not. The Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile.

This case began when a Dade County police officer, Frank Trujillo, overheard respondent, Enio Jimeno, arranging what appeared to be a drug transaction over a public telephone. Believing that Jimeno might be involved in illegal drug trafficking, Officer Trujillo followed his car. The officer observed respondents make a right turn at a red light without stopping. He then pulled Jimeno over to the side of the road in order to issue him a traffic citation. Officer Trujillo told Jimeno that he had been stopped for committing a traffic infraction. The officer went on to say that he had reason to believe that Jimeno was carrying narcotics in his car, and asked permission to search the car. He explained that Jimeno did not have to consent to a search of the car. Jimeno stated that he had nothing to hide and gave Trujillo

permission to search the automobile. After Jimeno's spouse, respondent Luz Jimeno, stepped out of the car, Officer Trujillo went to the passenger side, opened the door, and saw a folded, brown paper bag on the floorboard. The officer picked up the bag, opened it, and found a kilogram of cocaine inside.

The Jimenos were charged with possession with intent to distribute cocaine in violation of Florida law. Before trial, they moved to suppress the cocaine found in the bag on the ground that Jimeno's consent to search the car did not extend to the closed paper bag inside of the car. The trial court granted the motion. It found that although Jimeno "could have assumed that the officer would have searched the bag" at the time he gave his consent, his mere consent to search the car did not carry with it specific consent to open the bag and examine its contents. No. 88–23967 (Cir. Ct. Dade Cty., Fla., Mar. 21, 1989); App. to Pet. for Cert. A–6.

The Florida District Court of Appeal affirmed the trial court's decision to suppress the evidence of the cocaine. 550 So. 2d 1176 (Fla. 3d DCA 1989). In doing so, the court established a *per se* rule that "consent to a general search for narcotics does not extend to 'sealed containers within the general area agreed to by the defendant.'" *Ibid.* The Florida Supreme Court affirmed, relying upon its decision in *State* v. *Wells,* 539 So. 2d 464 (1989), aff'd on other grounds, 495 U. S. 1 (1990). 564 So. 2d 1083 (1990). We granted certiorari to determine whether consent to search a vehicle may extend to closed containers found inside the vehicle, 498 U. S. 997 (1990), and we now reverse the judgment of the Supreme Court of Florida.

The touchstone of the Fourth Amendment is reasonableness. *Katz* v. *United States,* 389 U. S. 347, 360 (1967). The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. *Illinois* v. *Rodriguez,* 497 U. S. 177 (1990). Thus, we have long approved consensual searches because it

is no doubt reasonable for the police to conduct a search once they have been permitted to do so. *Schneckloth* v. *Busta-monte,* 412 U. S. 218, 219 (1973). The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Illinois* v. *Rodriguez, supra,* at 183–189; *Florida* v. *Royer,* 460 U. S. 491, 501–502 (1983) (opinion of WHITE, J.); *id.,* at 514 (BLACKMUN, J., dissenting). The question before us, then, is whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car. We think that it is.

The scope of a search is generally defined by its expressed object. *United States* v. *Ross,* 456 U. S. 798 (1982). In this case, the terms of the search's authorization were simple. Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed Jimeno that he believed Jimeno was carrying narcotics, and that he would be looking for narcotics in the car. We think that it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. "Contraband goods rarely are strewn across the trunk or floor of a car." *Id.,* at 820. The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.

The facts of this case are therefore different from those in *State* v. *Wells, supra,* on which the Supreme Court of Florida relied in affirming the supression order in this case. There the Supreme Court of Florida held that consent to search the trunk of a car did not include authorization to pry open a locked briefcase found inside the trunk. It is very likely

unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag.

Respondents argue, and the Florida trial court agreed, that if the police wish to search closed containers within a car they must separately request permission to search each container. But we see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. Cf. *Illinois* v. *Gates,* 462 U. S. 213 (1983). A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization. "[T]he community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense." *Schneckloth* v. *Bustamonte, supra,* at 243.

The judgment of the Supreme Court of Florida is accordingly reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE STEVENS joins, dissenting.

The question in this case is whether an individual's general consent to a search of the interior of his car for narcotics should reasonably be understood as consent to a search of closed containers inside the car. Nothing in today's opinion dispels my belief that the two are not one and the same from the consenting individual's standpoint. Consequently, an individual's consent to a search of the interior of his car should not be understood to authorize a search of closed containers inside the car. I dissent.

In my view, analysis of this question must start by identifying the differing expectations of privacy that attach to cars and closed containers. It is well established that an individual has but a limited expectation of privacy in the interior of his car. A car ordinarily is not used as a residence or repository for one's personal effects, and its passengers and contents are generally exposed to public view. See *Cardwell* v. *Lewis*, 417 U. S. 583, 590 (1974) (plurality opinion). Moreover, cars "are subjected to pervasive and continuing governmental regulation and controls," *South Dakota* v. *Opperman*, 428 U. S. 364, 368 (1976), and may be seized by the police when necessary to protect public safety or to facilitate the flow of traffic, see *id.*, at 368–369.

In contrast, it is equally well established that an individual has a heightened expectation of privacy in the contents of a closed container. See, *e. g.*, *United States* v. *Chadwick*, 433 U. S. 1, 13 (1977). Luggage, handbags, paper bags, and other containers are common repositories for one's papers and effects, and the protection of these items from state intrusion lies at the heart of the Fourth Amendment. U. S. Const., Amdt. 4 ("The right of the people to be secure in their . . . papers, and effects, against unreasonable searches and seizures, shall not be violated"). By placing his possessions inside a container, an individual manifests an intent that his possessions be "preserve[d] as private," *Katz* v. *United States*, 389 U. S. 347, 351 (1967), and thus kept "free from public examination," *United States* v. *Chadwick, supra*, at 11.

The distinct privacy expectations that a person has in a car as opposed to a closed container do not merge when the individual uses his car to transport the container. In this situation, the individual still retains a heightened expectation of privacy in the container. See *Robbins* v. *California*, 453 U. S. 420, 425 (1981) (plurality opinion); *Arkansas* v. *Sanders*, 442 U. S. 753, 763–764 (1979). Nor does an individual's heightened expectation of privacy turn on the type of con-

tainer in which he stores his possessions. Notwithstanding the majority's suggestion to the contrary, see *ante*, at 251–252, this Court has soundly rejected any distinction between "worthy" containers, like locked briefcases, and "unworthy" containers, like paper bags.

> "Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction. For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case." *United States* v. *Ross*, 456 U. S. 798, 822 (1982) (footnotes omitted).

Because an individual's expectation of privacy in a container is distinct from, and far greater than, his expectation of privacy in the interior of his car, it follows that an individual's consent to a search of the interior of his car cannot necessarily be understood as extending to containers in the car. At the very least, general consent to search the car is ambiguous with respect to containers found inside the car. In my view, the independent and divisible nature of the privacy interests in cars and containers mandates that a police officer who wishes to search a suspicious container found during a consensual automobile search obtain additional consent to search the container. If the driver intended to authorize search of the container, he will say so; if not, then he will say no.* The only objection that the police could have to such a

---

*Alternatively, the police could obtain such consent in advance by asking the individual for permission to search both the car and any closed containers found inside.

rule is that it would prevent them from exploiting the ignorance of a citizen who simply did not anticipate that his consent to search the car would be understood to authorize the police to rummage through his packages.

According to the majority, it nonetheless is reasonable for a police officer to construe generalized consent to search an automobile for narcotics as extending to closed containers, because "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Ante*, at 251. This is an interesting contention. By the same logic a person who consents to a search of the car from the driver's seat could also be deemed to consent to a search of his person or indeed of his body cavities, since a reasonable person may be expected to know that drug couriers frequently store their contraband on their persons or in their body cavities. I suppose (and hope) that even the majority would reject this conclusion, for a person who consents to the search of his *car* for drugs certainly does not consent to a search of things *other than his car* for drugs. But this example illustrates that if there is a reason for not treating a closed container as something "other than" the car in which it sits, the reason cannot be based on intuitions about where people carry drugs. The majority, however, never identifies a reason for conflating the distinct privacy expectations that a person has in a car and in closed containers.

The majority also argues that the police should not be required to secure specific consent to search a closed container, because " '[t]he community has a real interest in encouraging consent.' " *Ante*, at 252, quoting *Schneckloth* v. *Bustamonte*, 412 U. S. 218, 243 (1973). I find this rationalization equally unsatisfactory. If anything, a rule that permits the police to construe a consent to search more broadly than it may have been intended would discourage individuals from consenting to searches of their cars. Apparently, the majority's real concern is that if the police were required to ask for additional consent to search a closed container found during the

consensual search of an automobile, an individual who did not mean to authorize such additional searching would have an opportunity to say no. In essence, then, the majority is claiming that "the community has a real interest" not in encouraging citizens to *consent* to investigatory efforts of their law enforcement agents, but rather in encouraging individuals to be *duped* by them. This is not the community that the Fourth Amendment contemplates.

Almost 20 years ago, this Court held that an individual could validly "consent" to a search—or, in other words, waive his right to be free from an otherwise unlawful search—without being told that he had the right to withhold his consent. See *Schneckloth* v. *Bustamonte, supra.* In *Schneckloth,* as in this case, the Court cited the practical interests in efficacious law enforcement as the basis for not requiring the police to take meaningful steps to establish the basis of an individual's consent. I dissented in *Schneckloth,* and what I wrote in that case applies with equal force here.

> "I must conclude, with some reluctance, that when the Court speaks of practicality, what it really is talking of is the continued ability of the police to capitalize on the ignorance of citizens so as to accomplish by subterfuge what they could not achieve by relying only on the knowing relinquishment of constitutional rights. Of course it would be "practical" for the police to ignore the commands of the Fourth Amendment, if by practicality we mean that more criminals will be apprehended, even though the constitutional rights of innocent people also go by the board. But such a practical advantage is achieved only at the cost of permitting the police to disregard the limitations that the Constitution places on their behavior, a cost that a constitutional democracy cannot long absorb." 412 U. S., at 288.

I dissent.