Ana LOPES, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–236–CR.

Court of Appeals of Texas, Waco.

Aug. 21, 2002.

Randy Martin, Houston, for Appellant/Relator.

Charles A. Rosenthal, Harris County District Attorney, Kevin P. Keating, Bill Blankenship, Harris County Assistant District Attorneys, Houston, for Appellee/Respondent.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

The trial court placed Ana Lopes on deferred-adjudication community supervision after she pled guilty to unlawfully carrying a weapon. A deputy found a gun in Lopes's purse during what she claims was an illegal search. The trial court denied her motion to suppress the gun as evidence, and she appeals that denial. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002).

### Facts

Deputy Richard Johnson testified he came upon a car stopped in the roadway, not against the curb, in a residential neighborhood. It was nighttime. Johnson said he noticed the driver's door was open and a male was standing at the door beside the driver (later identified as Lopes). At first Johnson thought he had encountered a stranded motorist, but when the male saw Johnson and then moved his arms toward the inside of the car as though placing something in it, Johnson suspected a drug transaction was taking place. As Johnson got out of his car, the male walked toward him. When they met, Johnson asked him if he had any guns or drugs on him; the male said he did, and Johnson found drugs in his pocket. Johnson arrested the male and placed him in the patrol car.

Johnson testified that then Deputy Mitchell Bettin arrived. With Bettin watching from Johnson's car, Johnson approached Lopes. Johnson said he had Lopes walk with him to his car where he asked her if she had any guns or drugs in her car. He said Lopes responded that she did not and that Johnson "could look." Johnson went back to the car where he "did a quick search of the driver's compartment area, anything that would have been close to her at that point." He saw a purse, later identified as Lopes's, sitting on the floor beside the driver's seat. He said he took the purse back to where Lopes was standing and opened it; he did not ask her for permission. He took out a wallet, under which he saw a gun. Johnson said Lopes told him she did not know how the gun got in her purse. After Johnson determined Lopes did not have a permit for the gun, he arrested her.

Bettin testified that Lopes told Johnson she did not have drugs or guns in her car and that he could "check or look." Johnson never requested to search her car. He said that Lopes was detained by him during Johnson's search of the car, i.e., she was not free to leave.

Lopes testified that on the night in question, she was on her way to make an Avon delivery, and she was giving the male, who is a friend of her son's, a ride. Where she stopped was in front of his grandparent's house. She said the house was on the driver's side of the street and that is why the male was on that side of the car. She opened the door because that window did not work. When Johnson pulled up, the male handed her a gun, which she did not know he had. She testified she did not place the gun on purpose into her purse, but rather "just dropped it. I didn't know what to do with it. I got cold-I got panicked. I didn't know what to do with it." She said it must have fallen into her purse. Johnson approached her and asked for her driver's license which she provided. Johnson told her to stay there, and he proceeded to search the male and arrest him. Next, Johnson came back and had her get out of her car and walk to his where he searched her. Then, she said, Johnson told her to stay there because he was going to search her car. He asked if she had any drugs, but did not ask about weapons. He never asked if he could search the car, and she never said he could. After Johnson got her purse and brought it back to the patrol car, Johnson found the gun.

### Standard of Review

■ A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). There is an abuse of discretion "when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App.1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

■ We give "almost total deference" to (a) the trial court's rulings on questions of historical fact and (b) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim. App.2002) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). And, in the absence of explicit findings, the appellate court assumes the trial court made whatever appropriate implicit findings that are supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim. App.2000); *Guzman*, 955 S.W.2d at 89–90. However, application-of-law-to-fact questions that do not turn on credibility and demeanor, including Fourth Amendment search and seizure law, are reviewed *de novo*. *Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89. Also, when the facts are undisputed and we are presented with a pure question of law, *de novo* review is proper. *Oles*, 993 S.W.2d at 106. Thus, for example, when the issue to be determined on appeal is whether an officer had probable cause, "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Guzman*, 955 S.W.2d at 87. Therefore, although due weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of matters such as reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).

■ However, a judicial ruling will not be reversed on appeal, even if made for the wrong reason, if the ruling is supported by the record and correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Calloway v. State*, 743 S.W.2d 645, 652 (Tex. Crim.App.1988). Similarly, when officers give the wrong reason for why their ac-

tions were legal under the Fourth Amendment, the case will not be reversed if the facts support a correct reason. *Williams v. State,* 726 S.W.2d 99, 100–01 (Tex.Crim. App.1986); *Esco v. State,* 668 S.W.2d 358, 366 (Tex.Crim.App.1982).

### Analysis

The State claims the search of Lopes's purse was consensual because Lopes gave permission to search the car. Therefore, the initial question is whether there was consent.

*Search of the Car:*

A voluntary consensual search is an exception to the probable cause and warrant requirements of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution. *Reasor v. State,* 12 S.W.3d 813, 817 (Tex.Crim.App.2000) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)); *Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Crim.App.1976); *Vargas v. State,* 18 S.W.3d 247, 253 (Tex.App.-Waco 2000, pet. ref'd). The defendant has the initial burden to show there was a search without a warrant. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986). Then the State has the burden of proof by clear and convincing evidence that consent was freely and voluntarily given. *State v. Ibarra,* 953 S.W.2d 242, 245 (Tex.Crim.App.1997); *Meeks v. State,* 692 S.W.2d 504, 509 (Tex. Crim.App.1985).[1] While we defer to the trial court for fact findings, we review *de novo* the legal question of whether consent was voluntary. *Vargas,* 18 S.W.3d at 253; *see Guzman,* 955 S.W.2d at 87. Consent must not be the product of duress or coercion, express or implied. *Reasor,* 12 S.W.3d at 817 (citing *Schneckloth,* 412 U.S. at 228, 93 S.Ct. at 2048); *James v. State,*

72 S.W.3d 35, 41 (Tex.App.-Texarkana 2002, no pet.). It must be positive and unequivocal, and it is not shown by acquiescence to a claim of lawful authority. *Carmouche,* 10 S.W.3d at 331; *Allridge v. State,* 850 S.W.2d 471, 492–93 (Tex.Crim. App.1991). Whether consent was voluntary is determined from the totality of the circumstances. *Reasor,* 12 S.W.3d at 818; *Kolb,* 532 S.W.2d at 90; *Vargas,* 18 S.W.3d at 253. Factors the courts have considered include the person's youth, education, and intelligence, the warnings about constitutional rights the person was given, the length of the detention, the repetitiveness of the questioning, and the use of force including handcuffing and weapons. *Reasor,* 12 S.W.3d at 818. Also, an officer's failure to warn the person that he does not have to give consent is an important factor in determining whether voluntary consent was given. *Byrd v. State,* 835 S.W.2d 223, 226 (Tex.App.-Waco 1992, no pet.) (citing *Meeks,* 692 S.W.2d at 510). But the warning is not required by law. *Roth v. State,* 917 S.W.2d 292, 303 (Tex.App.-Austin 1995, no pet.). Finally, an officer's testimony that consent was voluntarily given can be sufficient evidence to prove that it was. *Martinez v. State,* 17 S.W.3d 677, 683 (Tex. Crim.App.2000); *Allridge,* 850 S.W.2d at 492–93; *Morris v. State,* 50 S.W.3d 89, 99 (Tex.App.-Fort Worth 2001, no pet.).

Both deputies testified that Lopes volunteered that Johnson could search the car. Lopes denied that. Because the trial court is the ultimate determiner of the factfindings which turn on the credibility of the witnesses, we must give deference to its factfindings. *Johnson,* 68 S.W.3d at 652; *Vargas,* 18 S.W.3d at 253. Considering the totality of the circumstances, and finding no evidence of coercion or duress, we find that the record supports a determination that Lopes voluntarily consented for

---

1. The federal constitution requires proof only by a preponderance of the evidence. *United* States v. Matlock, 415 U.S. 164, 176–78, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974).

Johnson to search her car. *Reasor*, 12 S.W.3d at 818.

*Search of the Purse:*

 The next question is whether Johnson had consent to search the purse. This is a question of the "scope" of consent.

 When a person voluntarily consents to a search, the scope of the search is limited by the express object of the search. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991); *Montoya v. State*, 744 S.W.2d 15, 25 (Tex.Crim.App.1987); *Vargas*, 18 S.W.3d at 253; *James*, 72 S.W.3d at 42. We use an objective standard of what a reasonable person would have understood to be the scope, based on the exchange between the officer and the person allegedly giving consent. *Id.* One does not look for an elephant in a matchbox. Absent an explicit limitation by the person, consent to search inside a vehicle includes consent to search containers in which might be found the searched-for items. *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1804; *Vargas*, 18 S.W.3d at 254.

Johnson and Bettin both testified that Johnson inquired of Lopes if she had drugs or weapons in her car. It is objectively reasonable that a purse might contain either. Thus the scope of consent included Lopes's purse, and therefore, the trial court did not abuse its discretion in denying the motion to suppress.[2]

### Conclusion

We overrule Lopes's issue and affirm the trial court's denial of the motion to suppress.

---

**2.** The State also argues that Johnson had probable cause to search the car. We do not address that argument.