The Honorable Steve Napper State Representative 201 South Chester Little Rock, AR 72201-2015
Dear Representative Napper:
You have requested my opinion on a matter concerning pawnbrokers. You have provided the following hypothetical factual scenario:
 • An Arkansas pawnbroker receives tangible property pursuant to a pawn transaction from a customer;
 • The pawnbroker dutifully reports the item of property on its daily law enforcement log, reviewed for possible matches to stolen property;
 • A third party contacts a local law enforcement agency and reports an item to have been stolen;
 • The law enforcement agency reviews the daily inventory logs of the area pawnbrokers and locates property matching the description on the inventory log of the pawnbroker;
 • A law enforcement officer identifies the item of property on the pawnbroker's daily log, confronts the pawnbroker and demands possession of the alleged "stolen" property. To comply with the law enforcement officer's "seizure" of the property, the pawnbroker relinquishes possession of the property to the officer. The law enforcement officer then returns the property to the alleged owner, prior to any pre-deprivation hearing for the pawnbroker and any other person who may have property rights in the item.
Regarding the above-outlined scenario, you have asked:
 • Has there been a deprivation or "seizure" of property, from the pawnbroker, constituting a state action, in violation of due process, the Arkansas Constitution, and the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution?
 • Does the answer above change if the officer is taking the same action without the use of the daily law enforcement log?
In light of the fact that these questions appear to be clearly addressed by the Arkansas Supreme Court's decision in Landers v. Jameson, Case No. 03-114, 33 S.W.3d 140 (Ark. 12-4-2003), it is my understanding that your question concerning the above-described scenario can be articulated as follows:
 Given the fact that the Arkansas Supreme Court, in Landers v. Jameson,
Case No. 03-114, 33 S.W.3d 140 (Ark. 12-4-2003), struck down as unconstitutional the statutes (A.C.A. § 18-27-202 and 203) that authorized the course of action outlined above, would such action by law enforcement officers be unconstitutional in the absence of these statutes?
RESPONSE
The factual scenario that you have outlined, and your related question, implicate both the 4th and the 14th Amendments to the U.S. Constitution. The 4th Amendment prohibits unlawful searches and seizures. The 14th Amendment prohibits the state from depriving anyone of property without due process of law. The question of whether either of these constitutional principles will operate to prohibit any given course of action will depend in part upon the facts of the situation. For that reason, I cannot state definitively that any particular outcome will occur in all situations. However, I will discuss the principles that will be considered by the courts in determining the appropriate outcome.
4th Amendment
As indicated above, the 4th Amendment to the U.S. Constitution prohibits unlawful searches and seizures. Thus, any seizure of property from a pawnbroker by a law enforcement officer will be subject toFourth Amendment scrutiny. Some searches and seizures are, of course, lawful and permissible under the Fourth Amendment. Regarding Fourth
Amendment analysis, the U.S. Supreme Court has stated:
 We have long held that the "touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991). Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.
 In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.
Ohio v. Robinette, 519 U.S. 33, 39 (1996).
One of my predecessors in this office outlined some of the factors that will be considered in determining whether a particular "seizure" of property is permissible under the Fourth Amendment, as follows:
 [W]hen assessing the validity under the Fourth Amendment of a police seizure from a pawnbroker, one must consider the same factors that are relevant in the assessment of any seizure, including, but not necessarily limited to, the character of the property seized (see
A.R.Cr.P. Rule 10.2); whether a valid consent to the seizure has been obtained (see A.R.Cr.P. Rules 11.1-11.5); whether a seizure is proper as being incidental to an arrest (see A.R.Cr.P. Rules 12.1-12.6); whether a warrant has been obtained and, if so, whether all requisites to the validity of the warrant have been satisfied (see A.R.Cr.P. 13.1-13.6); whether the seizure may be justified as taking place in an emergency context (see A.R.Cr.P. 14.3); and whether the seizure is a valid seizure independent of a search (see A.R.Cr.P. 14.4). Factors set forth in applicable case law must, of course, also be considered in each particular case.
Op. Att'y Gen. No. 95-092.
All of the above-enumerated factors, as related to each situation, will impact the determination of whether the seizure in that particular situation was permissible under the Fourth Amendment. One matter is clear, however: Fourth Amendment principles will govern only if the seizure in question takes place in the context of a criminal proceeding for the purpose of preserving evidence. If it does not, the pertinent constitutional provision will be the 14th Amendment and the principle of due process. See United States v. James Daniel Good Real Property,510 U.S. 43 (1993).
14th Amendment
Landers, the case to which your question refers, involved the 14th
Amendment issue: due process.
Landers, supra, involved a factual scenario that was identical to the one you have outlined above. There, the police placed a "hold" on property that had been pawned, and upon an affidavit of the alleged true owner of the property, directed the pawnbroker to relinquish the property. When the pawnbroker refused, the alleged true owner sued, seeking not only the return of the property, but also his attorneys' fees. These actions all occurred under the authority of A.C.A. § 18-27-202 and -203, which state:
18-27-202. Return of stolen personal property to owner.
 When any pawnbroker in this state shall, in good faith or otherwise, acquire, by purchase, pawn, gift, or otherwise, any article of personal property which has been stolen from the owner thereof, the pawnbroker shall return the personal property to the true owner thereof upon his request and the execution of his affidavit of possession.
 18-27-203. Refusal to return property — Liability.
 (a) If any pawnbroker shall fail or refuse to return any property to the true owner thereof when requested to do so by him as provided in § 18-27-202, it shall be necessary for the true owner to resort to legal action to recover the property.
 (b) In the event that the true owner is successful in a legal action, the defendant pawnbroker shall be required to pay all reasonable expenses incurred by the owner in recovering the property, including court costs and attorneys' fees, and any damages suffered by the true owner as a result of the pawnbroker failing or refusing to return the property to the true owner when so requested by him.
A.C.A. § 18-27-202 and -203.
The pawnbroker challenged the constitutionality of these statutes, as applied in that situation. The court held that these statutes were unconstitutional as applied, because they required the pawnbroker to relinquish property in which it had an interest, prior to any hearing on the matter before a court. Thus these statutes, as applied, deprived the pawnbroker of property without due process in violation of the 14th
Amendment.
The court's holding in Landers comports with the general rule that under principles of due process, the hearing concerning a deprivation of property must be held at a meaningful time, and that time is usuallybefore deprivation of the property. See James Daniel Good Real Property,510 U.S. 43 (1993). The U.S. Supreme Court has held that in order for a hearing to be held after the deprivation and still satisfy the requirements of due process, the situation must be extraordinary and must involve an overriding state interest that would justify the delay of the hearing until after the deprivation. Id. See also Gilbert v. Homar,520 U.S. 924 (1997) ("This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Id. at 930.) The U.S. Supreme Court has further held that the state's interest in seizing property for the purpose of effecting a civil forfeiture (i.e., returning it to the rightful owner) does not rise to the level of exigency that is required to justify delay of the hearing until after the deprivation has occurred. United States v. James Daniel Good Real Property, supra.
When this principle is applied to the factual scenario you have outlined, it would appear that if the law enforcement officer in question seized the property in the context of a criminal proceeding for the purpose of preserving evidence or under other exigent circumstances, a delay of the hearing concerning the deprivation of the property until after the deprivation may be justifiable. However, if the purpose of the seizure of the property is solely to return it to an alleged true owner, such a delay would be constitutionally impermissible. Accord, Ops. Att'y Gen. Nos. 99-149; 95-092.
I emphasize that the constitutionality of the course of action taken in any given situation will turn largely on the facts of the situation. I have discussed only the broad legal principles that will be considered in determining the constitutional question in each case.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General