STILL V. STATE

     

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-408-CR

BRENDA JOYCE STILL A/K/A APPELLANT

BRENDA JOYCE FINCHER 

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Brenda Joyce Fincher a/k/a Brenda Joyce Still appeals her conviction for possession of less than one gram of methamphetamine.  In two points, she contends that the trial court improperly denied her motion to suppress.  We affirm.

Appellant was detained by a loss prevention officer at a Wal-Mart store for switching price tags.  Officer Noakes of the Fort Worth Police Department was dispatched to pick her up and take her to jail.  After he arrived at the scene, appellant said she needed to put some items in the trunk of her car and asked Officer Noakes if he would do that for her.  She gave the officer the keys to her car, and he opened the trunk. 

As soon as Officer Noakes opened appellant’s trunk, he saw some containers of muriatic acid, which he knew could be used to manufacture methamphetamine.  He then looked through the windows of appellant’s car to see if there were additional items that could be used to manufacture methamphetamine.  Behind the driver’s seat, he saw some containers of acetone, which he knew could be used to manufacture methamphetamine.   Officer Noakes then called an officer with the narcotics section to the scene.  Officer Noakes waited for the narcotics officer to arrive while appellant sat in the back seat of his patrol car.

When Officer Harald Cessnick,
(footnote: 2) the narcotics officer, arrived at the scene, he spoke with appellant in an attempt to obtain her consent to search the vehicle.  He asked for appellant’s consent to search the vehicle and informed her that he believed the chemicals in her car were highly flammable and potentially dangerous.  He also told appellant that he was looking for the types of items involved in the manufacture of methamphetamine such as batteries, gas cans, plastic hoses, rubber hoses, or coffee filters.  Officer Cessnick then gave appellant a consent-to-search form and explained, “in as simplistic terms as [he] possibly [could],” that signing the consent would allow the police to search everything that was in the vehicle.  

Appellant signed the consent form, which stated that she “ha[d] the right to refuse the officer . . . permission to conduct a search” and that she “voluntarily waive[d] . . . her rights, and g[a]ve her permission to [Officer Cessnick], along with any assisting officers, to conduct a complete search of  [her car].”  Officer Cessnick testified that before appellant signed the form, she read it and was given the opportunity to ask questions.  

Before Officer Noakes entered appellant’s vehicle to search it, he asked her “if she had any kind of drugs or drug paraphernalia in [it], needles or syringes, that might be dangerous if the officers might be poked with the needles during search.”  Appellant replied that she had some methamphetamine in her purse.  Officer Noakes found the drugs in a container inside a purse, which was sitting in the front seat of appellant’s car.  

Appellant was charged with possession of methamphetamine.  She filed a motion to suppress the evidence seized from her car, asserting that the search of her car was conducted without probable cause and in violation of the Texas and federal constitutions.  Following an evidentiary hearing, the trial court denied appellant’s motion.  Appellant then pleaded guilty to possession of less than one gram of methamphetamine.  

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.
(footnote: 3) 
 In reviewing the trial court’s decision, we do not engage in our own factual review.
(footnote: 4) 
 The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 5) 
 Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.
(footnote: 6)  
But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.
(footnote: 7) 
 

In her first point, appellant argues that the trial court erred by denying her motion to suppress because the scope of the officers’ search of her car exceeded the limits of her consent.  Specifically, she asserts that because the officers only had appellant’s consent to search for dangerous chemicals and chemicals which might be used to manufacture methamphetamine, they exceeded the limits of her consent by searching her purse and the container inside her purse.
(footnote: 8)  

The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of objective reasonableness
, i.e., what the typical reasonable person would have understood from the exchange between the officer and the suspect.
(footnote: 9)  The question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer.
(footnote: 10)  In applying this standard, the federal courts of appeals have held that it is objectively reasonable for an officer to conclude that an individual’s general consent to the search of his vehicle includes the consent to search closed but unlocked containers found in the vehicle.
(footnote: 11) 

It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity.  It is just as obvious that such evidence might be hidden in closed containers.  If the consent to the search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.
(footnote: 12)
Thus, if an officer makes a general request to search and the individual consents, knowing that there are unlocked containers in her vehicle, the individual should expressly limit her consent to the vehicle but not the containers, or, at the very least, she should object when the officer begins to open the container.
(footnote: 13)
 In this case, appellant’s general consent to the search of her car  permitted the officers to search unlocked containers that they found in the car.
(footnote: 14)  The fact that Officer Cessnick did not specifically ask for consent to search for drugs is immaterial; it is objectively reasonable that a search of the car’s interior would have included the purse and any containers in which chemicals, batteries, hoses or coffee filters might be found.
(footnote: 15)  Therefore, we overrule appellant’s first point.  

In her second point, appellant asserts that the methamphetamine was seized in violation of her
 rights under 
Miranda
, the Texas Constitution, and articles 38.22 and 38.23 of the Texas Code of Criminal Procedure and therefore, should be suppressed under the “fruit of the poisonous tree” doctrine.
(footnote: 16)  She asserts that while she was under arrest, she was not given the proper warnings before making the statement to Officer Noakes that she had methamphetamine in her purse, and, therefore, the methamphetamine should be suppressed.
(footnote: 17)  We disagree. 

In 
Miranda v. Arizona
, the Supreme Court held that a person questioned by law enforcement officers after being taken into custody or otherwise deprived of her freedom must first be made aware of her right to remain silent, that her statements may be used against her in court, and that she has a right to an attorney.
(footnote: 18)  Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial.
(footnote: 19) In order for the 
Miranda
 safeguards to apply, there must be two showings: (1) the suspect must have been “in custody,” and (2) the police must have “interrogated” the suspect either by express questioning or its functional equivalent.
(footnote: 20)
 Article 38.22 of the Texas Code of Criminal Procedure generally precludes the use of statements that result from custodial interrogation absent compliance with its procedural safeguards.
(footnote: 21)  Section five of article 38.22, however, specifically exempts statements which do not stem from custodial interrogation.
(footnote: 22)  Thus, if appellant’s statement did not stem from custodial interrogation, neither 
Miranda
 nor article 38.22 requires the suppression of her statement.
(footnote: 23)
 In this case, the State does not dispute that appellant was in custody at the time she made the statement to Officer Noakes.  Rather, the State contends that appellant’s statement did not stem from an interrogation because the purpose of Officer Noakes’s question was not to elicit evidence of a crime but instead to protect the officers who conducted the search from sharp objects such as syringes full of methamphetamine.  

The term “interrogation” refers not only to express questioning, but also “to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.”
(footnote: 24)  Not all post-arrest questioning constitutes an interrogation.
(footnote: 25)  For example, routine inquiries, questions incident to booking, broad general questions such as “what happened” upon arrival at the scene of a crime, and questions mandated by public safety concerns are not interrogation.
(footnote: 26)
 In this case, Officer Noakes’ question was not made in an attempt to elicit evidence of a crime, but rather, made for purposes of public safety.  His testimony reveals that his main concern was that the searching officers not be hurt by a sharp object—such as a syringe full of methamphetamine—during the search of appellant’s vehicle.  His question was specific and limited to items that “might be dangerous if the officers might be poked with the needles during the search.”  Further, no rational investigatory purpose could have prompted such a question about premises which the officers were already authorized to, intended to, and did search with appellant’s written consent.
(footnote: 27)  Therefore, we conclude that Officer Noakes’s question was not interrogation for purposes of article 38.22 and 
Miranda
.  We overrule appellant’s second point.   

Having overruled appellant’s two points, we affirm the trial court’s judgment.   

PER CURIAM

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  October 12, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Officer Cessnick is also referred to by the parties as Officer Cussnick.  

3:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 

4:
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). 

5:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

6:
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).

7:
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

8:
Appellant does not argue that her consent was involuntary or coerced. 

9:
Florida v. Jimeno
, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04 (1991); 
Simpson v. State
, 29 S.W.3d 324, 330 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d). 

10:
United States v. Mendoza-Gonzalez,
 318 F.3d 663, 667 (5th Cir.), 
cert. denied,
 538 U.S. 1049 (2003); 
Wayne R. LaFave, Search & Seizure
 § 8.1(c), at 19 (4th ed. 2004).

11:
See Mendoza-Gonzalez,
 318 F.3d at 667 (holding that consent to “take a look” inside accused’s truck included consent to search boxes found in truck); 
United States v. Snow,
 44 F.3d 133, 134-35 (2nd Cir. 1995) (holding that consent to search car included consent to search duffel bag found in back seat and bag jammed under seat); 
United States v. Zapata,
 18 F.3d 971, 977-78 (1st Cir. 1994) (holding that consent to search car included consent to search duffel bags found in trunk); 
see generally
 
LaFave, Search & Seizure
 § 8.1(c), at 24-26.

12:
Snow,
 44 F.3d at 135.

13:
Mendoza-Gonzalez,
 318 F.3d at 667.

14:
See id. 
(holding that consent to search inside trailer of commercial vehicle properly extended to box in trailer that “could be easily opened by removing or cutting through a single piece of tape,” where police did not damage box or its contents).

15:
See Jimeno
, 500 U.S. at 251, 111 S. Ct. at 1804; 
 Lopes v. State
, 85 S.W.3d 844, 849 (Tex. App.—Waco 2002, no pet.).

16:
See Miranda v. Arizona
, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1996); 
Tex. Code Crim. Proc. Ann.
 arts. 38.22, 38.23 (Vernon 2006). 

17:
Appellant does not contend that her statement that she had methamphetamine in her purse should be suppressed.  

18:
Miranda
, 384 U.S. at 444, 86 S. Ct. at 1612.

19:
See id. 
at 492.  

20:
Jones v. State
, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990).  

21:
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 2.

22:
Id. 
§ 5.

23:
Miranda
, 384 U.S. at 444, 86 S. Ct. at 1612; 
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 5.

24:
Rhode Island v. Innis
, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90 (1980); 
Shepherd v. State
, 915 S.W.2d 177, 179 (Tex. App.—Fort Worth 1996, pet. ref’d).

25:
Jones
, 795 S.W.2d at 174. 

26:
See id.
 at 174 n.3; 
see also New York v. Quarles
, 
467 U.S. 649, 655 104 S. Ct. 2626, 2631 (1984); 
Bryant v. State
, 816 S.W.2d 554, 557 (Tex. App.—Fort Worth 1991, no pet.) (both recognizing the public safety exception to 
Miranda
).

27:
See
 
U.S. v. Castellana
, 500 F.2d 325, 326 (5th Cir. 1974) (stating that defendant’s unwarned response to an officer’s question about whether he had any weapons within reach before the officers conducted a valid search did not infringe on defendant’s 
Miranda
 rights because the officer was not questioning defendant in an attempt to elicit evidence of a crime but rather, to ensure the safety of the operation); 
see also Quarles
, 
467 U.S. at 655, 104 S. Ct. at 2631; 
Bryant
, 816 S.W.2d at 557 (discussing the public safety exception to 
Miranda
).