COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-408-CR

 

 

BRENDA
JOYCE STILL A/K/A                                                 APPELLANT

BRENDA JOYCE FINCHER                                                                     

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Brenda Joyce
Fincher a/k/a Brenda Joyce Still appeals her conviction for possession of less
than one gram of methamphetamine.  In two
points, she contends that the trial court improperly denied her motion to
suppress.  We affirm.








Appellant was detained by a
loss prevention officer at a Wal-Mart store for switching price tags.  Officer Noakes of the Fort Worth Police
Department was dispatched to pick her up and take her to jail.  After he arrived at the scene, appellant said
she needed to put some items in the trunk of her car and asked Officer Noakes
if he would do that for her.  She gave
the officer the keys to her car, and he opened the trunk. 

As soon as Officer Noakes
opened appellant=s trunk, he
saw some containers of muriatic acid, which he knew could be used to
manufacture methamphetamine.  He then
looked through the windows of appellant=s car to see if there were additional items that could be used to
manufacture methamphetamine.  Behind the
driver=s seat, he saw some containers of acetone, which he knew could be used
to manufacture methamphetamine.   Officer
Noakes then called an officer with the narcotics section to the scene.  Officer Noakes waited for the narcotics
officer to arrive while appellant sat in the back seat of his patrol car.








When Officer Harald Cessnick,[2]
the narcotics officer, arrived at the scene, he spoke with appellant in an
attempt to obtain her consent to search the vehicle.  He asked for appellant=s consent to search the vehicle and informed her that he believed the
chemicals in her car were highly flammable and potentially dangerous.  He also told appellant that he was looking
for the types of items involved in the manufacture of methamphetamine such as
batteries, gas cans, plastic hoses, rubber hoses, or coffee filters.  Officer Cessnick then gave appellant a consent-to-search
form and explained, Ain as
simplistic terms as [he] possibly [could],@ that signing the consent would allow the police to search everything
that was in the vehicle.  

Appellant signed the consent
form, which stated that she Aha[d] the right to refuse the officer . . . permission to conduct a
search@ and that she Avoluntarily
waive[d] . . . her rights, and g[a]ve her permission to [Officer Cessnick],
along with any assisting officers, to conduct a complete search of  [her car].@  Officer Cessnick testified
that before appellant signed the form, she read it and was given the
opportunity to ask questions.  

Before Officer Noakes entered
appellant=s vehicle to
search it, he asked her Aif she had
any kind of drugs or drug paraphernalia in [it], needles or syringes, that
might be dangerous if the officers might be poked with the needles during
search.@  Appellant replied that she had
some methamphetamine in her purse. 
Officer Noakes found the drugs in a container inside a purse, which was
sitting in the front seat of appellant=s car.  








Appellant was charged with
possession of methamphetamine.  She filed
a motion to suppress the evidence seized from her car, asserting that the
search of her car was conducted without probable cause and in violation of the
Texas and federal constitutions.  Following
an evidentiary hearing, the trial court denied appellant=s motion.  Appellant then
pleaded guilty to possession of less than one gram of methamphetamine.  








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.[3]  In reviewing the trial court=s decision, we do not engage in our own factual review.[4]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[5]  Therefore, we give almost total deference to
the trial court=s rulings on
(1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.[6]  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.[7]  

In her first point, appellant
argues that the trial court erred by denying her motion to suppress because the
scope of the officers= search of her
car exceeded the limits of her consent. 
Specifically, she asserts that because the officers only had appellant=s consent to search for dangerous chemicals and chemicals which might
be used to manufacture methamphetamine, they exceeded the limits of her consent
by searching her purse and the container inside her purse.[8]  








The standard for measuring
the scope of a suspect=s consent
under the Fourth Amendment is that of objective reasonableness, i.e., what the
typical reasonable person would have understood from the exchange between the
officer and the suspect.[9]  The question is not to be determined on the
basis of the subjective intentions of the consenting party or the subjective
interpretation of the searching officer.[10]  In applying this standard, the federal courts
of appeals have held that it is objectively reasonable for an officer to
conclude that an individual=s general consent to the search of his vehicle includes the consent to
search closed but unlocked containers found in the vehicle.[11]


It is
self-evident that a police officer seeking general permission to search a
vehicle is looking for evidence of illegal activity.  It is just as obvious that such evidence
might be hidden in closed containers.  If
the consent to the search is entirely open-ended, a reasonable person would
have no cause to believe that the search will be limited in some way.[12]








Thus, if an officer makes a general request to
search and the individual consents, knowing that there are unlocked containers
in her vehicle, the individual should expressly limit her consent to the
vehicle but not the containers, or, at the very least, she should object when
the officer begins to open the container.[13]

In this case, appellant=s general consent to the search of her car  permitted the officers to search unlocked
containers that they found in the car.[14]  The fact that Officer Cessnick did not
specifically ask for consent to search for drugs is immaterial; it is
objectively reasonable that a search of the car=s interior would have included the purse and any containers in which
chemicals, batteries, hoses or coffee filters might be found.[15]  Therefore, we overrule appellant=s first point.  








In her second point,
appellant asserts that the methamphetamine was seized in violation of her
rights under Miranda, the Texas Constitution, and articles 38.22 and
38.23 of the Texas Code of Criminal Procedure and therefore, should be
suppressed under the Afruit of the
poisonous tree@ doctrine.[16]  She asserts that while she was under arrest,
she was not given the proper warnings before making the statement to Officer
Noakes that she had methamphetamine in her purse, and, therefore, the
methamphetamine should be suppressed.[17]  We disagree. 

In Miranda v. Arizona,
the Supreme Court held that a person questioned by law enforcement officers
after being taken into custody or otherwise deprived of her freedom must first
be made aware of her right to remain silent, that her statements may be used
against her in court, and that she has a right to an attorney.[18]  Statements elicited in noncompliance with
this rule may not be admitted for certain purposes in a criminal trial.[19]
In order for the Miranda safeguards to apply, there must be two
showings: (1) the suspect must have been Ain custody,@ and (2) the
police must have Ainterrogated@ the suspect either by express questioning or its functional
equivalent.[20]








Article 38.22 of the Texas
Code of Criminal Procedure generally precludes the use of statements that
result from custodial interrogation absent compliance with its procedural
safeguards.[21]  Section five of article 38.22, however, specifically
exempts statements which do not stem from custodial interrogation.[22]  Thus, if appellant=s statement did not stem from custodial interrogation, neither Miranda
nor article 38.22 requires the suppression of her statement.[23]

In this case, the State does
not dispute that appellant was in custody at the time she made the statement to
Officer Noakes.  Rather, the State
contends that appellant=s statement
did not stem from an interrogation because the purpose of Officer Noakes=s question was not to elicit evidence of a crime but instead to
protect the officers who conducted the search from sharp objects such as
syringes full of methamphetamine.  








The term Ainterrogation@ refers not
only to express questioning, but also Ato any words or actions on the part of the police (other than those
normally attendant to arrest and custody) that the police should know are
reasonably likely to elicit an incriminating response.@[24]  Not all post-arrest
questioning constitutes an interrogation.[25]  For example, routine inquiries, questions
incident to booking, broad general questions such as Awhat happened@ upon
arrival at the scene of a crime, and questions mandated by public safety
concerns are not interrogation.[26]








In this case, Officer Noakes= question was not made in an attempt to elicit evidence of a crime,
but rather, made for purposes of public safety.  His testimony reveals that his main concern
was that the searching officers not be hurt by a sharp objectCsuch as a syringe full of methamphetamineCduring the search of appellant=s vehicle.  His question was
specific and limited to items that Amight be dangerous if the officers might be poked with the needles
during the search.@  Further, no rational investigatory purpose
could have prompted such a question about premises which the officers were
already authorized to, intended to, and did search with appellant=s written consent.[27]  Therefore, we conclude that Officer Noakes=s question was not interrogation for purposes of article 38.22 and Miranda.  We overrule appellant=s second point.   

Having overruled appellant=s two points, we affirm the trial court=s judgment.          

PER CURIAM

PANEL A:   CAYCE,
C.J.; HOLMAN and WALKER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 12, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Officer
Cessnick is also referred to by the parties as Officer Cussnick.  





[3]Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 





[4]Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.). 





[5]State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).





[6]Johnson
v. State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App.
2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).





[7]Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson,
68 S.W.3d at 652‑53.





[8]Appellant
does not argue that her consent was involuntary or coerced. 





[9]Florida
v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04
(1991); Simpson v. State, 29 S.W.3d 324, 330 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d). 





[10]United
States v. Mendoza-Gonzalez, 318 F.3d 663, 667 (5th Cir.), cert.
denied, 538 U.S. 1049 (2003); Wayne
R. LaFave, Search & Seizure ' 8.1(c), at 19 (4th ed.
2004).





[11]See
Mendoza-Gonzalez, 318 F.3d at 667 (holding that consent to Atake
a look@
inside accused=s
truck included consent to search boxes found in truck); United States v.
Snow, 44 F.3d 133, 134-35 (2nd Cir. 1995) (holding that consent to search
car included consent to search duffel bag found in back seat and bag jammed
under seat); United States v. Zapata, 18 F.3d 971, 977-78 (1st Cir.
1994) (holding that consent to search car included consent to search duffel
bags found in trunk); see generally LaFave,
Search & Seizure ' 8.1(c), at 24-26.





[12]Snow, 44
F.3d at 135.





[13]Mendoza-Gonzalez, 318
F.3d at 667.





[14]See
id. (holding that consent to search inside trailer of commercial vehicle
properly extended to box in trailer that Acould be easily opened by
removing or cutting through a single piece of tape,@
where police did not damage box or its contents).





[15]See
Jimeno, 500 U.S. at 251, 111 S. Ct. at 1804;  Lopes v. State, 85 S.W.3d 844, 849 (Tex.
App.CWaco
2002, no pet.).





[16]See
Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1996);
Tex. Code Crim. Proc. Ann. arts.
38.22, 38.23 (Vernon 2006). 





[17]Appellant
does not contend that her statement that she had methamphetamine in her purse
should be suppressed.  





[18]Miranda, 384
U.S. at 444, 86 S. Ct. at 1612.





[19]See
id. at 492.  





[20]Jones
v. State, 795 S.W.2d 171, 174 (Tex. Crim. App.
1990).  





[21]Tex. Code Crim. Proc. Ann. art.
38.22, ' 2.





[22]Id. ' 5.





[23]Miranda, 384
U.S. at 444, 86 S. Ct. at 1612; Tex.
Code Crim. Proc. Ann. art. 38.22, ' 5.





[24]Rhode
Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90
(1980); Shepherd v. State, 915 S.W.2d 177, 179 (Tex. App.CFort
Worth 1996, pet. ref=d).





[25]Jones, 795
S.W.2d at 174. 





[26]See
id. at 174 n.3; see also New York v. Quarles, 467 U.S. 649, 655
104 S. Ct. 2626, 2631 (1984); Bryant v. State, 816 S.W.2d 554, 557 (Tex.
App.CFort
Worth 1991, no pet.) (both recognizing the public safety exception to Miranda).





[27]See U.S.
v. Castellana, 500 F.2d 325, 326 (5th Cir. 1974) (stating that defendant=s
unwarned response to an officer=s question about whether he
had any weapons within reach before the officers conducted a valid search did
not infringe on defendant=s Miranda
rights because the officer was not questioning defendant in an attempt to
elicit evidence of a crime but rather, to ensure the safety of the operation); see
also Quarles, 467 U.S. at 655, 104 S. Ct. at 2631; Bryant, 816
S.W.2d at 557 (discussing the public safety exception to Miranda).