KELLY, Circuit Judge, dissenting.
 

 I agree that the encounter between Investigator Plowman and Garcia started as
 a consensual one. Plowman approached and engaged Garcia in conversation, asking about his destination and the purpose of his travel. He informed Garcia that he was engaged in drug interdiction and asked to see Garcia's ticket. And he asked Garcia for consent to search his bag. The law regarding consent to search is clear. As the court explains, we look at the circumstances present and determine whether, under those circumstances, "a reasonable officer would believe consent was given."
 
 Correa
 
 ,
 
 641 F.3d at 967
 
 (quoting
 
 United States v. Pena-Ponce
 
 ,
 
 588 F.3d 579
 
 , 584 (8th Cir. 2009) ). However, we also must determine the scope of any consent given. As we have stated, "[t]he boundaries of a consensual search are confined to the scope of the consent."
 
 United States v. Shafer
 
 ,
 
 608 F.3d 1056
 
 , 1064 (8th Cir. 2010). And, as with consent generally, we rely on "a standard of objective reasonableness."
 
 Id.
 
 "To determine the scope, we consider what the typical reasonable person would have understood by the exchange between the officer and the suspect."
 

 Id.
 

 at 1064-65
 
 (cleaned up).
 

 A reasonable person would have understood that Garcia consented to a visual search of his bag. Garcia opened the bag for Investigator Plowman when asked. And I agree that there is nothing about Garcia's "age, education, intelligence, sobriety, [or] experience with the law,"
 
 Correa
 
 ,
 
 641 F.3d at 966
 
 (quoting
 
 United States v. Va Lerie
 
 ,
 
 424 F.3d 694
 
 , 709 (8th Cir. 2005) (en banc) ), that would render his consent involuntarily given. But a reasonable person would have understood that the scope of Garcia's consent did not extend to a physical search. When Plowman directly asked to search Garcia's luggage, Garcia responded by asking "Um, why ... ?" When asked again, Garcia said "Um, I don't know why." The court here agrees that-under the objective reasonableness standard-these statements did not constitute verbal consent, and, indeed, Plowman testified that he understood Garcia's use of the phrase "I don't know why" to be a denial of consent. So, Plowman next asked if Garcia would open the bag himself. Garcia, maintaining possession and control of his bag, implicitly consented when he removed his bag from the overhead rack and unzipped it. Plowman then asked if he (Plowman) could move the clothing in the bag, and Garcia again said "Um, I don't know why"-another denial of consent for a physical search. Plowman then suggested that Garcia move the clothes himself, saying "Or will
 
 you
 
 just move that ...." Only then, while still maintaining physical custody of the bag, did Garcia comply with the request. And at no time during this back and forth did Garcia give Plowman consent-explicitly or implicitly-to conduct a physical search of his bag.
 

 Nonetheless, Investigator Plowman asked if he could touch the bottom of Garcia's bag. But this time, he didn't wait for a response before reaching into the bag and touching the bottom. And as Plowman reached in, Garcia gave the same denial he had given twice before: "Um, I don't know why." This was a search to which Garcia did not consent.
 
 See
 

 Shafer
 
 ,
 
 608 F.3d at
 
 1064-65 ;
 
 see also
 

 Florida v. Jimeno
 
 ,
 
 500 U.S. 248
 
 , 251,
 
 111 S.Ct. 1801
 
 ,
 
 114 L.Ed.2d 297
 
 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is ... what would the typical reasonable person have understood by the exchange between the officer and the suspect."). I agree that-up to that point-Garcia's actions in complying with Plowman's step-by-step requests had been "consistent with consent." But they are consistent with consent only to the extent that he did, in fact, comply. Garcia complied only with the requests for a visual search, and had denied previous requests
 for a physical search. When Plowman reached into the bag and touched the bottom, before getting any response from Garcia, that physical search exceeded the scope of any implicit consent Garcia had previously given. That began a violation of Garcia's Fourth Amendment rights.
 

 I also disagree that Garcia expanded the scope of any implicit consent he had given. Once Plowman physically searched Garcia's bag without his consent, there was no reason for Garcia to believe that continuing to limit the scope of his consent would be of any consequence.
 
 Lemmons
 
 is not to the contrary.
 
 282 F.3d at 924-25
 
 . A person
 
 can
 
 expand the boundaries of consent after initially limiting them. But the defendant in
 
 Lemmons
 
 , unlike here, did so voluntarily-even eagerly.
 

 Id.
 

 at 925
 
 ("[O]nce the search began, Lemmons started showcasing his photographs as though they were vacation souvenirs. ... When [the officer] asked, on the heels of viewing Lemmons' pictures, whether there was anything on the computer that he needed to be aware of, Lemmons invited [him] to check."). And the officer in
 
 Lemmons
 
 never exceeded the scope of Lemmons's consent. Here, the scope of Garcia's consent was limited; Plowman exceeded that scope when he physically reached into Garcia's bag; and no reasonable officer would believe that Garcia's acquiescence to Plowman's subsequent actions amounted to voluntary consent to expand the scope of the search. For these reasons, I respectfully dissent.